**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| OAKWOOD PRODUCTS, INC.,           )<br>                                                         )<br>                      Plaintiff,              )<br>                                                         )   No. 9:20-cv-04107-DCN<br>          vs.                                         )<br>                                                         )              **ORDER**<br>SWK TECHNOLOGIES, INC.,         )<br>                                                         )<br>                      Defendant.          )<br>_____) | |

The following matter is before the court on defendant SWK Technologies, Inc.'s ("SWK") motion for partial summary judgment, ECF No. 23. For the reasons set forth below, the court grants in part and denies in part the motion.

## I. BACKGROUND

This action arises out of a breach of contract dispute between SWK and defendant Oakwood Products, Inc. a/k/a Oakwood Chemical ("Oakwood"). SWK is an information technology consulting company that provides enterprise resource planning and accounting software products and consulting services, among other services. Its products include Sage 500 and Acumatica ERP ("Acumatica"), which are business management software programs that assist companies with their accounting, supply chain, and other needs. SWK is incorporated in Delaware, and its principal place of business is in New Jersey.

Oakwood is a South Carolina corporation that operates a fine organics manufacturing facility in North Estill, South Carolina. On or around January 21, 2019, SWK and Oakwood entered into a Statement of Work ("SOW") in which SWK agreed to transition Oakwood's business management software from Sage 500 to Acumatica. The

1

SOW was subject to a Master Services Agreement (the "Agreement"), which was signed by both parties on or around January 28, 2019.

The Agreement, which was created by SWK, provided various disclaimers. This included a "Limitations on Liability" section, which stated:

> 7.  **Limitations on Liability** - IN NO EVENT SHALL SWK BE LIABLE TO CUSTOMER OR ANY OTHER PERSON OR ENTITY FOR ANY LOSS OF RECORDS OR DATA OR FOR SPECIAL, EXEMPLARY, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES OF ANY KIND OR NATURE WHATSOEVER, WHETHER OR NOT THE POSSIBILITY OF SUCH DAMAGES HAS BEEN DISCLOSED TO SWK IN ADVANCE OR COULD HAVE BEEN REASONABLY FORESEEN BY SWK, AND WHETHER IN AN ACTION BASED ON CONTRACT, WARRANTY, STRICT LIABILITY, TORT OR OTHERWISE. SWK'S TOTAL LIABILITY FOR DAMAGES ARISING OUT OF THIS AGREEMENT OR ANY STATEMENT OF WORK FOR ANY SERVICES PERFORMED OR PRODUCTS OR DELIVERABLES PROVIDED HERE UNDER OR THEREUNDER, WHETHER IN AN ACTION BASED ON CONTRACT, WARRANTY, STRICT LIABILITY, TORT OR OTHERWISE, SHALL NOT EXCEED THE TOTAL AMOUNT PAID OR PAYABLE BY CUSTOMER TO SWK HEREUNDER.

ECF No. 24-2 ¶ 7 (all caps in original).

The Agreement also contained a warranties section, which provided, in relevant part:

> 8.  **Warranties; No Implied Warranties** - Unless other warranties are provided in the applicable Statement of Work, SWK warrants that the Services performed under each Statement of Work will be performed in a professional manner in accordance with generally accepted industry standards . . . .
>
> Customer's sole remedy, and SWK's sole obligation, with respect to any failure to provide the Services in accordance with the foregoing warranty is to re-perform the applicable Services . . . .
>
> EXCEPT AS MAY BE EXPRESSLY PROVIDED IN THIS SECTION OR IN A STATEMENT OF WORK, SWK DOES NOT MAKE ANY REPRESENTATION OR WARRANTY OF ANY KIND, WHETHER SUCH REPRESENTATION OR WARRANTY BE EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY

> OR FITNESS FOR A PARTICULAR PURPOSE, ANY WARRANTY FROM COURSE OF DEALING OR USAGE OF TRADE OR ANY WARRANTY OF NONINFRINGEMENT.

Id. ¶ 8 (all caps in original). Additionally, the agreement contained a provision which stated that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey." Id. ¶ 14.

According to Oakwood, during the engagement, SWK failed to identify and address several issues with Acumatica in a suitable manner. These alleged deficiencies included issues with the program speed and with its shipping and pricing features, which were crucial to Oakwood's business. Oakwood also claims that the transition from Sage 500 to Acumatica was delayed due to the SWK's project managers' lack of technical proficiency in implementing the software. Fourteen months after the project start date, SWK had yet to complete the transition. As a result, Oakwood hired a third-party vendor—TechRiver, LLC ("TechRiver")—to analyze the incomplete configuration of Acumatica. Based on TechRiver's recommendation, Oakwood ultimately decided to upgrade its Sage 500 software with TechRiver rather than complete the Acumatica deployment.

On October 27, 2020, Oakwood filed a complaint in the Hampton County Court of Common Pleas against SWK, alleging (1) breach of contract, (2) breach of warranty, and (3) fraud and negligent misrepresentation. ECF No. 1-1, Compl. On November 25, 2020, SWK filed its notice of removal to this court. ECF No. 1. On September 22, 2021, Oakwood filed an amended complaint against SWK. ECF No. 35, Amend. Compl.

On August 18, 2021, SWK filed its motion for partial summary judgment. ECF No. 23. Oakwood responded in opposition on September 7, 2021, ECF No. 27, and SWK replied on September 14, 2021, ECF No. 31. The court held a telephonic hearing on the

motion on October 25, 2021. ECF No. 39. As such, the motion has been fully briefed and is now ripe for review.

## II. STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

## III. DISCUSSION

As a preliminary matter, Oakwood filed an amended complaint after SWK filed its motion for partial summary judgment. The court first briefly addresses whether the amended complaint moots any part of the motion for partial summary judgment. Finding

4

it does not, the court then addresses the merits of the motion for partial summary judgment.

### A. Mootness

SWK requests summary judgment for two primary reasons, neither of which are rendered moot by Oakwood's amended complaint. First, SWK argues in its motion for partial summary judgment that the Agreement precludes Oakwood from pursuing lost profit and consequential damages. ECF No. 24 at 3; see Compl. ¶ 56 ("Plaintiff is entitled to an award of lost profit damages . . . ."); Compl. at prayer (requesting "award of actual and consequential damages"). Oakwood's amended complaint adds additional causes of action for rescission of contract and fraud in the inducement but continues to allege that Oakwood is entitled to lost profit damages, Amend. Compl. ¶ 89, and consequential damages, id. at prayer. Because the amended complaint did not remove the requests for lost profit and consequential damages, it did not moot SWK's request for summary judgment as to those damages.

Second, SWK argues that the Agreement bars Oakwood's causes of action for fraud and negligent misrepresentation and limits Oakwood's breach of warranty claim to express warranties. ECF No. 24 at 4; see Compl. ¶¶ 52, 57. These two causes of action remain in Oakwood's amended complaint and the substantive allegations in support of both remain unchanged. See Amend. Compl. ¶¶ 65, 85. Therefore, SWK's motion for partial summary judgment has not been mooted by Oakwood's amended complaint, and the court turns to the substance of SWK's motion.

### B. Motion for Partial Summary Judgment

Federal Rule of Civil Procedure 56 does not require trial courts to allow parties to conduct discovery before entering summary judgment. Anzaldula v. Northeast Ambulance and Fire Prot. Dist., 793 F.3d 822, 836 (8th Cir. 2015); see Fed. R. Civ. P. 56(b). However, the general rule is that "summary judgment should only be granted 'after adequate time for discovery.'" Patrick v. PHH Mortg. Corp., 988 F. Supp. 2d 478, 484 (N.D. W. Va. 2014) (quoting Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986)). "Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." McCray v. Md. Dep't of Transp., Md. Transit Admin., 741 F.3d 480, 483 (4th Cir. 2014). As a result, Rule 56(d) provides that "summary judgment [should] be denied when the nonmovant 'has not had the opportunity to discover information that is essential to his opposition.'" Pisano v. Strach, 743 F.3d 927, 931 (4th Cir. 2014) (quoting Ingle ex rel. Est. of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006)).

Here, Oakwood represents that "discovery in this case is incomplete." ECF No. 27 at 2. According to Oakwood, no depositions have been conducted and Oakwood did not receive SWK's first set of discovery responses until after this motion was filed. However, Oakwood did not file a Rule 56(d) motion, which would allow the nonmoving party to represent through an "affidavit or declaration that, for specified reasons, [the party] cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). "[T]he nonmoving party cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery or moved for a continuance to

6

permit discovery before the district court ruled." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996).  Instead of a Rule 56(d) affidavit or declaration, Oakwood only makes general claims about the type of information that has yet to be unearthed by discovery.  See, e.g., ECF No. 27 at 12 ("[T]here are unresolved questions of fact relating to the 'generally accepted industry standards' identified in the Warranty provision relating to which discovery has not been conducted.").  As such, the court lends some weight to the lack of discovery that has yet to be conducted but overall, will proceed by determining whether a genuine dispute of material fact exists based on the exhibits presented by the parties.

SWK argues that it is entitled to summary judgment on (1) Oakwood's claims for consequential and lost profit damages and (2) Oakwood's causes of action for fraud and negligent misrepresentation and implied warranties.  The court addresses each argument in turn.

### 1. Consequential and Lost Profit Damages

As previously mentioned, SWK first argues that it is entitled to summary judgment on the conclusion that Oakwood's claims for consequential and lost profit damages are barred by the Agreement.  To support its argument, SWK points to the "Limitations on Liability" section in the Agreement, which provides that "in no event shall SWK be liable . . . for special, exemplary, indirect, consequential or punitive damages" and that the "total liability for damages arising out of this agreement . . . shall not exceed the total amount paid or payable by customer to SWK."  ECF No. 24-2 ¶ 7 (all caps removed).

In response, Oakwood presents two primary arguments. First, Oakwood argues that it has asserted that SWK's warranty failed in its essential purpose, and "the potential applicability of a consequential damages waiver cannot be determined until the finder of fact determines that the essential purpose of the warranty did not actually fail." ECF No. 27 at 9. Second, Oakwood argues that the "Limitations on Liability" provision is unconscionable, and, in turn, that the issue of unconscionability is subject to unresolved questions of fact. Id. at 12–13. In reply, SWK argues that both Oakwood's essential purpose and unconscionability arguments are "grounded in the Uniform Commercial Code ("UCC")," but that the Agreement here is a contract for services. ECF No. 31 at 2.

The court addresses the myriad of issues individually. First, the court discusses the applicable law for interpretation of the Agreement. Finding that South Carolina law governs, the court then addresses Oakwood's principal argument that the Limitations on Liability section is enforceable. Third, the court addresses whether the UCC applies to the Agreement. Finally, the court considers Oakwood's "essential purpose" and unconscionability arguments, respectively, in light of the court's determination that the UCC does not apply.

### a. Choice-of-Law

As a preliminary matter, both SWK and Oakwood present their arguments under South Carolina law. Curiously, neither party addresses the choice-of-law provision in the Agreement which specifies that New Jersey law applies. A federal court tasked with applying state law must apply the forum state's choice-of-law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Traditional South Carolina choice of law rules dictate that "contracts are to be governed as to their nature, validity and

interpretation by the law of the place where they are made, unless the contracting parties clearly appear to have had some other place in view." See Lister v. NationsBank of Del., N.A.., 494 S.E.2d 449, 455 (S.C. Ct. App. 1997) (quoting Livingston v. Atl. Coast Line R.R., 180 S.E. 343, 345 (S.C. 1935)).  However, "where performance is at issue . . . the law of the place of performance governs." Witt v. Am. Trucking Assocs., Inc., 860 F. Supp. 295 (D.S.C. 1994) (citing Livingston, 180 S.E. at 345).  Here, the parties appeared to have a "place in view" because the Agreement specified that New Jersey law applied.  Nevertheless, the weight of authority suggests that a party may waive enforcement of a choice-of-law provision by failing to assert it.  See Williams v. BASF Catalysts LLC, 765 F.3d 306, 316 (3d Cir. 2014) ("All U.S. Courts of Appeals to have addressed the issue have held that choice-of-law issues may be waived."); see also Bilancia v. Gen. Motors Corp., 538 F.2d 621, 623 (4th Cir. 1976).  Not only have both parties failed to assert that the choice-of-law provision applies, but counsel for SWK agreed at the hearing that the issue had apparently been waived.  The court thus finds that both parties have waived the right to assert the choice-of-law provision.  Turning to South Carolina's choice-of-law rules, this action concerns SWK's performance under the Agreement, and the contract was to be performed in South Carolina.  Therefore, the court is satisfied that South Carolina law applies.  The court next turns to SWK's argument that a limitation of liability clause is enforceable as a general matter under South Carolina law.

### b.  Limitation of Liability Clauses Generally

According to SWK, "limitation of liability and exculpation clauses are routinely entered into" in South Carolina, and South Carolina courts have found them to be "commercially reasonable."  ECF No. 24 at 4 (quoting Gladden v. Boykin, 739 S.E.2d

9

882, 884 (S.C. 2013)).  SWK does not directly dispute this conclusion, and the court finds that SWK's statement is a fair recitation of the law.  See also Maybank v. BB&T Corp., 787 S.E.2d 498, 573–74 (S.C. 2016) (finding that "contractual limitations are normally enforced" and collecting cases).  Critically, however, the South Carolina Supreme Court went on to note that "notwithstanding our general acceptance of limitation of liability provisions and exculpatory clauses, the law disfavors such provisions." Id. (citations omitted).  "Moreover, should a court find the provision violates public policy or is unconscionable, the court may declare the provision unenforceable." Id. (citing Pride v. S. Bell Tel. & Tel. Co., 138 S.E.2d 155, 157 (S.C. 1964)).  These collective principles provide clear guidance that while the Limitation on Liability provision may be enforceable, it is still subject to conditions and is not automatically enforceable.  Notably, Oakwood argues that it is still entitled to consequential damages if the limited remedy in the contract fails of its essential purpose or, alternatively, that the limitations will not be enforced if the provision is determined to be unconscionable.  SWK responds that both arguments rely upon a determination that the Agreement is governed by the UCC.  As such, the court will analyze whether the contract is a sale of goods.

### c. Uniform Commercial Code

Title thirty-six of South Carolina's Code of Laws is the Uniform Commercial Code, and Chapter Two specifically governs the sale of goods.  See S.C. Code Ann. § 36-1-101 ("This title shall be known and may be cited as the Uniform Commercial Code."); S.C. Code Ann. § 36-2-102 ("[T]his Chapter applies to transactions in goods . . . .").  Under the UCC, "goods" are "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." S.C. Code Ann. § 36-2-

105. The question of whether computer programs and software are goods has long been debated. While courts have often "classified the sale of a software package as [a] sale of a good for UCC purposes," Rottner v. AVG Techs. U.S., Inc., 943 F. Supp. 2d 222, 230 (D. Mass. 2013), the applicability of the UCC to software as a service ("SaaS") and mass-market software licenses is less certain, see Michael L. Rustad & Elif Kavusturan, A Commercial Law for Software Contracting, 76 WASH. & LEE L. REV. 775, 822–26 (2019) (collecting cases and arguing SaaS and software licensing contracts do not involve tangible goods).

However, the court need not resolve this quandary because SWK has proven that, regardless of whether Acumatica constitutes a good, the Agreement was primarily a contract for services. There is no genuine dispute that the Agreement is—as SWK puts it—"replete with references to the services that will be provided by SWK." ECF No. 31 at 2 (emphasis omitted). The Agreement itself is titled the "Master Services Agreement." The Agreement further states that SWK "will provide certain managed and/or technical services." ECF No. 24-2 at recital. SWK concludes that when a contract is clearly for the provision of services, the fact that the contract may involve goods does not change the calculus. The court agrees. In In re Breast Implant Product Liability Litigation, the Supreme Court of South Carolina determined that the UCC was inapplicable "where the predominant purpose of the transaction was the provision of medical services." 503 S.E.2d 445, 449 (S.C. 1998). The court adopted the reasoning that a "physician is not in the business of selling products, but rather is in the profession of providing medical services. Products . . . are incidental, or integral, to a physician's service, but they are not the focus of the physician's delivery of health care." Id. (quoting Porter v. Rosenberg,

650 So. 2d 79, 81–82 (Fla. Dist. Ct. App. 1995)). The court further reasoned that that "even with a product, such as a breast implant, a physician is exercising his or her professional judgment in determining what medical procedure to perform." Id. (quoting Porter, 650 So. 2d at 82). The court finds that the medical procedure described in In re Breast Implant is analogous to the software installation here. The evidence before the court indicates that Acumatica is available from other third-party licensers, but Oakwood selected SWK based on their ability to "complete the Acumatica configuration and customization." Compl. ¶ 9. Moreover, Oakwood's own exhibits indicate that their chief complaints were about SWK's implementation of Acumatica, rather than defects with the software itself. See ECF No. 27-3 (discussing SWK's response to speed issues); ECF No. 27-4 (discussing "develop[ment] of a solution" for shipping issue); ECF No. 27-5 (describing troubleshooting and outstanding issues).

In response, Oakwood argued at the hearing that there is a bevy of case law that indicates custom software agreements are considered contracts for goods. However, this argument ignores SWK's contention that Acumatica itself is an ancillary part of the Agreement. Even if the court were to give weight to prior cases that found software agreements were governed by the UCC, the court finds that those cases are distinguishable. For example, in Audio Visual Artistry v. Tanzer, the court determined that the UCC applied to a contract for a custom software because language about the sale of goods predominated, noting that "[t]hroughout the contract, [defendant] is referred to as the 'purchaser,' [which indicates] a sales of goods contract." 403 S.W.3d 789, 800 (Tenn. Ct. App. 2012). Therefore, while the Tanzer court determined that "installation and service" was "incidental to the overarching purpose of its business," applying the

same reasoning to the Agreement here compels the opposite conclusion, given that the service was the overarching purpose. Other courts have similarly applied the predominant purpose test but found that the facts warranted finding that the parties intended a contract for goods under Article 2. See Springbrook Software, Inc. v. Douglas Cnty, 2015 WL 2248449, at *13 (W.D. Wis. May 13, 2015) (finding that a terms and conditions addendum for the software license supported "the conclusion that the parties' primary goal was to contract for the sale of a software package as opposed to services"). In Springbrook, the court looked to other evidence, such as the fact that the software company charged the customer a lump sum, rather than billed on an hourly basis. Id. at *14. Here, SWK represented that SWK billed Oakwood for both a lump sum and an hourly rate for its service. Even in light of the minimal discovery conducted thus far, the court is persuaded that no reasonable juror would consider the Agreement to be anything but a contract for predominately services. The court turns to Oakwood's arguments with this determination in mind.

### d. Essential Purpose

The Court in Maybank found that a limitation on liability clause will not be universally upheld if, for example, it violates public policy or is unconscionable. Oakwood in essence argues that there is another exception when an exclusive remedy fails of its essential purpose, and in such cases, consequential damages cannot be limited by agreement. Oakwood argues, in turn, that the court cannot rule on this issue "until the finder of fact determines that the essential purpose of the warranty did not fail." ECF No. 27 at 9. In support, Oakwood cites a South Carolina state court's finding that "[d]espite the exclusive remedy provisions [permitted by] § 36-2-719, in certain circumstances a

party may nonetheless be entitled to the general remedies of the UCC," which include consequential damages that arise when a remedy fails of its essential purpose.[1] Bishop Logging Co. v. John Deere Indus. Equip. Co., 455 S.E.2d 183, 191 (S.C. Ct. App. 1995) (cited at ECF No. 27 at 9–10). In other words, similar to South Carolina common law, the UCC allows parties to negotiate for an exclusive or limited remedy but provides that such a remedy must give way to other remedies if it fails in its essential purpose.

As argued, Oakwood's defense only applies under the UCC. Since the court has concluded that the UCC does not govern the Agreement, Oakwood's argument fails, and the court sees no other reason to lend the argument any weight. Therefore, the court grants summary judgment in SWK's favor on this issue.

### e. Unconscionability

Finally, Oakwood argues that the Limitation on Liability provision is unconscionable and cannot be upheld. In response, SWK again asserts that unconscionability applies "only to the sale of goods," as evidenced by the fact that Oakwood cites to the South Carolina UCC provision of S.C. Code Ann. § 36-2-302. ECF No. 31 at 2. The court disagrees. It is true that Oakwood precedes its discussion of unconscionability with the caveat that it pursues the argument "[t]o the extent the claims are governed by the UCC." ECF No. 27 at 11. However, the equitable defense of

---

[1] As best as the court can construe it, Oakwood's argument here is a response on whether it is generally entitled to consequential damages, rather than just on its breach of warranty claim. Although Oakwood argues that the issue is whether the express warranty failed of its essential purpose, Bishop Logging did not indicate that § 36-2-719 only applies to warranty clauses. See also S.C. Code Ann. § 36-2-719 ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose . . . ."). The court will provide Oakwood with the benefit of doubt since the parties' briefs are like two ships passing in the night.

14

unconscionability is not solely a UCC remedy in South Carolina.  See HSGCHG Invs., LLC v. Time Warner Cable Enters. LLC, 2016 WL 3595504, at *5–6 (D.S.C. July 5, 2016) (applying unconscionability analysis under South Carolina law to arbitration provision in services contract); Wells Fargo Bank, N.A. v. Smith, 2012 WL 10987189, at *3 (S.C. Ct. App. June 13, 2012) cert. denied and ordered depublished, 2014 WL 2887651 (S.C. June 11, 2014) (describing "common law unconscionability").  SWK cites In re Breast Implant for the proposition that an unconscionability defense is only available under the UCC; however, the court there simply stated that "the U.C.C.'s implied warranty appears inapplicable to services."  In re Breast Implant, 503 S.E.2d at 452 (cited at ECF No. 31 at 2).  Therefore, Oakwood may properly argue that the Limitation on Liability provision in the Agreement is unconscionable regardless of whether the UCC applies to the Agreement.

Assuming Oakwood raised unconscionability as an equitable defense, the court must determine whether it should void the Limitation on Liability provision as unconscionable as a matter of law.  In South Carolina, unconscionability is "the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them."  Carolina Care Plan, Inc. v. United Health Care Servs., Inc., 606 S.E.2d 752, 757 (S.C. 2004) (citation omitted).  To determine if there is an absence of meaningful choice, courts look to several factors, including "the nature of the injuries, any disparity in the parties' bargaining power, the level of sophistication of the parties, whether there is an element of surprise in the challenged clause, and the conspicuousness of the clause."  Maybank, 787 S.E.2d at 516.

15

Since South Carolina law attempts to "give legal effect to the parties' intentions as determined by the contract language," "only in rare circumstances" should courts invalidate a contract on the basis of unconscionability. See id. at 516.

Oakwood argues that the Agreement was unconscionable for purposes of summary judgment because there are unresolved questions of fact for each of the relevant factors. For example, Oakwood contends that "[t]here are questions of fact as to the relative sophistication and bargaining power as it relates to a contract for customization of software." ECF No. 27 at 11. The court disagrees. Noting again that Oakwood could have filed a Rule 56(d) motion declaring what other evidence of unconscionability it expects to discover, the evidence before the court presents no genuine dispute of material fact on this issue. The Agreement is a fairly succinct six-page contract with five pages of terms. See generally ECF No. 24-2. The warranty disclaimer and Limitation on Liability provision are clearly set out in their own sections and emphasized with capitalization; they are clearly conspicuous. Regarding the parties' bargaining power and Oakwood's level of sophistication, Oakwood acknowledged at the hearing that it is a sophisticated party in terms of its ability to engage in and comprehend contracts. As such, the court is satisfied that none of the circumstances typically showing a disparity in bargaining power are present. See Maybank, 787 S.E.2d at 516 (considering whether the party spoke English, had the ability to consult an attorney, or faced other circumstances that made signing the contract grossly inequitable). Oakwood may not be a sophisticated customer as it relates to software, but there is no dispute that the company, its president, or its attorneys were sophisticated enough to review a six-page contract before signing on the dotted line.

Oakwood also argues that the Agreement was unconscionable because "[i]t was impossible for Oakwood to know at the time of contracting that SWK could not fix the software system within a reasonable time." ECF No. 27. As the court sees it, Oakwood's argument here is merely a recitation of its substantive claims and does not speak to the disparity of bargaining power or those other factors that courts consider to determine whether an agreement is unconscionable.[2] Because the court finds that it is able to determine as a matter of law that the Limitation on Liability provision is not unconscionable, the court finds summary judgment is proper on this issue. In tandem with the prior determination on consequential damages, the court grants SWK's motion for partial summary judgment as to consequential damages and lost profit damages because Oakwood has failed to demonstrate a genuine dispute of material fact as to whether the Limitations on Liability provision is enforceable.

### 2. Fraud and Negligent Misrepresentation; Implied Warranty

The court next turns to the other basis upon which SWK seeks partial summary judgment. SWK argues that the Agreement's disclaimer of any warranties beyond the express warranty bars Oakwood's cause of action for fraud and negligent misrepresentation. SWK further argues that the same clause limits Oakwood's breach of warranty claim to those for express warranties, but not implied warranties. In response, Oakwood first argues that "the warranty does not state that Oakwood is precluded from

---

[2] Similarly, Oakwood asserts in the same argument that "SWK made false statements and misrepresentations to induce Oakwood to enter into the Services Agreement . . . that SWK lacked the experience and ability to complete." ECF No. 27 at 10. Once again, these speak to Oakwood's substantive claims for fraud and negligent misrepresentation, but they do not prove that the Agreement or the negotiation of the terms was oppressively one-sided.

filing claims for fraud, misrepresentation or fraud in the inducement." ECF No. 27 at 5–6.  Second, Oakwood argues that it did not plead any cause of action for breach of implied warranty, and therefore, a ruling excluding implied warranties is not necessary.  The court addresses each argument in turn.

### a. Fraud and Negligent Misrepresentation

The court agrees that the warranty disclaimer in the Agreement has no bearing on Oakwood's fraud and negligent misrepresentation claim.  The South Carolina Supreme Court has held that an agreement which contained the following disclaimer provision did not afford any protection to the sellers against buyers' allegations of fraud and negligent misrepresentation: "This written instrument expresses the entire agreement, and all promises, covenants, and warranties between the Buyer and Seller."  Slack v. James, 614 S.E.2d 636, 637 (S.C. 2005).  Even when contracts contain non-reliance clauses that state, for example, that the parties acknowledge they did "not receive[] or rel[y] upon any statements or representations . . . which are not expressly stipulated herein," courts have found that buyers could still assert claims for negligent misrepresentation and fraud because "to hold otherwise 'would leave swindlers free to extinguish their victims' remedies simply by sticking in a bit of boilerplate.'"  In re Marine Energy Sys. Corp., 299 F. App'x 222, 229 (4th Cir. 2008) (quoting Slack, 614 S.E.2d at 637, 641).  The court finds that to read a disclaimer of fraud and negligent misrepresentation into paragraph eight of the Agreement would directly contravene South Carolina caselaw and be against public policy.  As such, the court denies SWK's motion for partial summary judgment as to the fraud and negligent misrepresentation claim.

### b. Implied Warranties

SWK does not respond to Oakwood's argument that there are no causes of action in the complaint for implied warranties. Oakwood alleges, in both its complaint and amended complaint, that "SWK breached the implied covenant of good faith and fair dealing by representing that it possessed the knowledge and capability to perform the transition from Sage 500 to Acumatica." Compl. ¶ 50; Amend. Compl. ¶ 63. In South Carolina, the implied covenant of good faith and fair dealing is a basis for contractual remedy, wholly distinct from an implied warranty for the sale of products. Compare Bodie-Noell Props., Inc. v. 42 Magnolia P'ship, 544 S.E.2d 279, 284 (S.C. Ct. App. 2000) ("[T]here exists in every contract an implied covenant of good faith and fair dealing.") with Soaper v. Hope Indus., Inc., 424 S.E.2d 493, 495 (S.C. 1992) (describing two types of implied warranties: implied warranty of fitness and implied warranty of merchantability). Therefore, the court is satisfied that the complaint does not allege a breach of any implied warranties, and SWK's motion for partial summary judgment seeking to dismiss any claims for implied warranties is immaterial and denied.

### IV.  CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART AND DENIES IN PART** the motion.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**November 10, 2021
Charleston, South Carolina**