**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | | |
|---|---|---|
| OAKWOOD PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 9:20-cv-04107-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| SWK TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The following matter is before the court on six pending motions. Three were filed by plaintiff Oakwood Products, Inc. a/k/a Oakwood Chemical ("Oakwood"): (1) a motion to compel, ECF No. 44; (2) a motion for leave to file a second amended complaint, ECF No. 45; and (3) a motion in limine to exclude the report and testimony of Phil Sim, ECF No. 50. Another three were filed by defendant SWK Technologies, Inc. ("SWK"): (4) a motion for partial summary judgment, ECF No. 47; (5) a motion to quash the subpoena to Acumatica, Inc. ("Acumatica"), ECF No. 52; and (6) a motion to quash the subpoena to Greytrix, ECF No. 63. For the reasons set forth below, the court (1) holds the motion to compel in abeyance, (2) grants the motion for leave to file a second amended complaint, (3) grants in part and denies in part the motion to exclude, (4) grants in part and denies in part the motion for partial summary judgment, (5) denies the motion to quash as to Acumatica, and (6) finds the motion quash moot as to Greytrix.

## I.  BACKGROUND

This action arises out of a breach of contract dispute between Oakwood and SWK. SWK is an information technology consulting company that provides enterprise resource planning and accounting software products and consulting services, among other

services.  It assists with the implementation of third-party software products, including Sage 500 and Acumatica ERP, which are business management software programs that assist companies with their accounting, supply chain, and other needs.  Acumatica is the developer of Acumatica ERP.

Oakwood is a South Carolina corporation that operates a fine organics manufacturing facility in North Estill, South Carolina.  On or around January 21, 2019, SWK and Oakwood entered into a Statement of Work ("SOW") in which SWK agreed to transition Oakwood's business management software from Sage 500 to Acumatica ERP. The SOW was accompanied by a Master Services Agreement (the "Agreement"), which was signed by both parties on or around January 28, 2019.

According to Oakwood, during the engagement, SWK failed to identify and address several issues with Acumatica in a suitable manner.  These alleged deficiencies included issues with the program speed and with its shipping and pricing features, which were crucial to Oakwood's business.  Oakwood also claims that the transition from Sage 500 to Acumatica was delayed due to the SWK's project managers' lack of technical proficiency in implementing the software.  Fourteen months after the project start date, SWK had yet to complete the transition.  As a result, Oakwood hired a third-party vendor—TechRiver, LLC ("TechRiver")—to analyze the incomplete configuration of Acumatica ERP.  Based on TechRiver's recommendation, Oakwood ultimately decided to upgrade its Sage 500 software with TechRiver rather than complete the Acumatica ERP deployment with SWK.

On October 27, 2020, Oakwood filed a complaint in the Hampton County Court of Common Pleas against SWK.  ECF No. 1-1, Compl.  On November 25, 2020, SWK

2

filed its notice of removal to this court.  ECF No. 1.  On September 22, 2021, Oakwood filed an amended complaint against SWK.  ECF No. 35, Amend. Compl.  The amended complaint, now the operative complaint, alleges causes of action for: (1) rescission of contract, (2) breach of contract, (3) fraud and negligent misrepresentation, (4) fraud in the inducement, and (5) breach of warranty.  Id.

On March 11, 2022, Oakwood filed its motion to compel.  ECF No. 44.  SWK responded in opposition on March 25, 2022, ECF No. 46, and Oakwood replied on April 1, 2022, ECF No. 54.  On March 11, 2022, Oakwood filed its motion for leave to file a second amended complaint.  ECF No. 45.  SWK responded in opposition on March 25, 2022, ECF No. 49, and Oakwood replied on April 1, 2022, ECF No. 53.  On March 25, 2022, SWK filed its motion for partial summary judgment.  ECF No. 47.  Oakwood responded to the motion on April 8, 2022, ECF No. 57, and SWK replied on April 15, 2022, ECF No. 60.  On March 25, 2022, Oakwood filed its motion in limine to exclude the report and testimony of Phil Sim.  ECF No. 50.  SWK responded to the motion on April 8, 2022, ECF No. 56, and Oakwood replied on April 15, 2022, ECF No. 61.  On March 29, 2022, SWK filed its motion to quash the subpoena to Acumatica.  ECF No. 52. Oakwood responded in opposition on April 12, 2022, ECF No. 59, and SWK replied on April 19, 2022, ECF No. 62.  SWK filed its motion to quash the subpoena to Greytrix on April 20, 2022, ECF No. 63.  On May 4, 2022, Oakwood responded in opposition.  ECF No. 64.  SWK did not file a reply and the time to do so has now elapsed.  As such, the motions have been fully briefed and are now ripe for review.

## II.  DISCUSSION

The court considers each of the motions in the order in which they were filed, ultimately finding that (1) Oakwood's motion to compel should be held in abeyance, (2) Oakwood's motion for leave to file a second amended complaint should be granted, (3) SWK's motion for partial summary judgment should be granted in part and denied in part, (4) Oakwood's motion in limine to exclude the report and testimony of Phil Sim should be granted in part and denied in part, (5) SWK's motion to quash the subpoena to Acumatica should be denied, and (6) Oakwood's motion to quash the subpoena to Greytrix is moot.

### A.  Oakwood's Motion to Compel

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order,

> [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.  Rather, information is relevant and discoverable if it relates to "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). "The scope and conduct of discovery are within the sound discretion of the district court." Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th

Cir. 1995) (citing <u>Erdmann v. Preferred Rsch., Inc. of Ga.</u>, 852 F.2d 788, 792 (4th Cir. 1988)); <u>see also</u> <u>U.S. ex rel. Becker v. Westinghouse Savannah River Co.</u>, 305 F.3d 284, 290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

If a party declines to comply with a discovery request, the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). An evasive or incomplete disclosure, answer, or response "must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). District courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion." <u>Ardrey v. United Parcel Serv.</u>, 798 F.2d 679, 683 (4th Cir. 1986); <u>In re MI Windows & Doors, Inc. Prod. Liab. Litig.</u>, 2013 WL 268206, at *1 (D.S.C. Jan. 24, 2013).

Oakwood moves the court to compel defendants to provide supplemental responses to its First Request for Production No. 16. That item requests: "Any and all documents concerning customer complaints related to or concerning software implementation projects performed by SWK from January 1, 2011 to the present." ECF No. 44-1 at 7.

SWK responded to Request for Production No. 16, stating, "Defendant objects to Request for Production No. 16 as vague, ambiguous, overbroad, and unduly burdensome. Subject to and reserving this objection, Defendant does not maintain a customer complaint system." ECF No. 44-2 at 7.

On February 17, 2022, Oakwood deposed Dene Powell ("Powell"), a senior sales executive at SWK. ECF No. 44-3, Powell Dep. According to Oakwood, Powell's

testimony revealed another "failed software implementation project" involving a company called Arch-I-Tech Doors, Inc. ("Arch-I-Tech"). ECF No. 44 at 1. Oakwood states that after reaching out to and conferring with Matthew Wood, Arch-I-Tech's executive vice president and chief operating officer, Oakwood had sufficient reason to believe that Arch-I-Tech registered complaints with SWK regarding SWK's purported failure to complete the project under the contract between those two companies. ECF No. 54 at 2. As such, Oakwood argues that SWK is obligated to supplement its response to Request for Production No. 16 with information about these and other related complaints.

In response, SWK first argues that Oakwood's motion to compel is untimely. Under Local Civil Rule 37.01(A) (D.S.C.), motions to compel must be filed "within twenty-one (21) days after receipt of the discovery response to which the motion to compel is directed." SWK served its responses to Oakwood's first set of requests for production on September 16, 2021. As SWK observes, Oakwood sent a letter providing its objections to certain responses, but Oakwood did not raise any specific objections to Request for Production No. 16. ECF No. 46-1. As such, Oakwood did not timely file a motion to compel a response to the same under the local rules. On this point, Oakwood argues that under the Third Amended Consent Scheduling Order, "limited written discovery" may be conducted "[t]o the extent that any records or information is identified in depositions that were requested during written discovery and not previously provided." ECF Nos. 43, 44-4. Oakwood argues that since it did not learn about the dispute between Arch-I-Tech and SWK until Powell's deposition, it subsequently requested, via email, that SWK supplement its response to Request for Production No. 16 by providing:

> [1] All email correspondence between SWK and Arch-I-Tech regarding the Acumatica ERP implementation prior to, during, and after the parties were engaged; [2] The Master Services Agreement and Statement(s) of Work and other associated contract documents between SWK and Arch-I-Tech; [3] All documents, agreements, and related items pertaining to the termination of the engagement between the parties and subsequent refund paid by SWK to Arch-I-Tech.

ECF No. 44-5. The court agrees that when Oakwood learned about a potential complaint filed by Arch-I-Tech with SWK, it identified the potential existence of "records or information . . . that were requested during written discovery and not previously provided" such that additional written discovery investigating the complaint is allowed under the Third Amended Consent Scheduling Order. ECF No. 43. Therefore, the court preliminarily finds that Oakwood is entitled to limited supplemental discovery under Request for Production No. 16.

Second, SWK argues that notwithstanding Local Rule 37.01, its objections on the grounds that the request was "vague, ambiguous, overbroad, and unduly burdensome" should still be enforced. ECF No. 46 at 3. In other words, SWK argues that even if Oakwood identified relevant new records or information from Powell's deposition, SWK's prior objections still stand. In response, Oakwood argues that outside of its "blanket objections," SWK responded that it did not maintain a customer complaint system.

The court finds that both sides raise valid arguments. Certainly, SWK is correct that Oakwood could have objected to SWK's response to Request for Production No. 16 at the time it objected to the rest of SWK's responses. If the response is vague or ambiguous now, it undoubtedly was vague or ambiguous then. On the other hand, Oakwood has a valid basis for arguing that it relied upon SWK's response that it lacks a customer complaint database, even though such language was preceded by an objection

7

stating that the request was vague, ambiguous, broad, and unduly burdensome.  Other courts have previously determined that general objections on "vagueness, ambiguity, broadness, and excessive burden[,] without more," do not comply with the requirements of Rule 34.  Hager v. Graham, 267 F.R.D. 486, 492 (N.D. W. Va. 2010).  Instead, the rule requires "specific grounds in addition to the boilerplate."  Id.  SWK now clarifies that Request for Production No. 16 is overly broad because the term "customer complaint" is undefined and "could be interpreted to mean any time a customer filed a formal complaint against SWK with a court or arbitrator during the previous ten and a half years."  ECF No. 46 at 3.  However, this specificity was lacking in SWK's original response to the first request for production.

The court stated at the hearing—and the parties assented—that to resolve the issue, Oakwood should file a new request for production that is specifically tailored to discovery on the customer complaints filed by Arch-I-Tech and Tom Fouts Tire Co. ("Tom Fouts Tire"), another company that Oakwood allegedly discovered had issues with SWK.  After that, SWK will have an opportunity to file a formal objection to the new discovery request.  Furthermore, although Oakwood's motion to compel incorporated by reference the requests that were contained in its email to SWK, the court finds that Oakwood's motion for SWK to "supplement [its] Response to Request for Production No. 16" was indeed overly broad, as the email to counsel for SWK requested documents that appear to be outside the scope of the request.  See ECF No. 44 at 3 (requesting a supplement to the discovery request, "including but not limited to producing the documents" referenced in paragraph five).  A new discovery request will allow Oakwood to rectify this as well.  The court thus holds Oakwood's motion in abeyance, and after

8

SWK has had the opportunity to object to the discovery request, the court will grant, deny, or further limit the request as it deems appropriate.

### B. Oakwood's Motion for Leave to File Second Amended Complaint

"[A]fter the deadlines provided by a scheduling order have passed, the [Rule 16(b)] good cause standard must be satisfied to justify leave to amend the pleadings." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008). Rule 16(b)'s good cause standard "focuses on the timeliness of the amendment and the reason for its tardy submission; the primary consideration is the diligence of the moving party." Montgomery v. Anne Arundel Cnty., 182 F. App'x 156, 162 (4th Cir. 2006); see RFT Mgmt. Co., LLC v. Powell, 607 F. App'x 238, 242 (4th Cir. 2015). "In seeking leave to amend, the 'movant must demonstrate that the reasons for the tardiness of his motion justify a departure from the rules set by the court in its scheduling order.'" Thomason v. Toyota Motor Eng'g & Mfg. N. Am., Inc., 2017 WL 10901214, at *6 (D.S.C. Mar. 6, 2017) (citing United States v. Godwin, 247 F.R.D. 503, 506 (E.D.N.C. 2007)).

"If the movant satisfies Rule 16(b)'s 'good cause' standard, [he] must then pass the requirements for amendment under Rule 15(a)." Dilmar Oil Co. v. Federated Mut. Ins. Co., 986 F. Supp. 959, 980 (D.S.C. 1997). Under Rule 15, a party may amend a pleading as a matter of course within 21 days after serving it; however, in all other cases, a party may amend its pleading only with the opposing party's consent or the court's leave. Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "A motion to amend should be denied 'only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" HCMF Corp. v. Allen,

238 F.3d 273, 276 (4th Cir. 2001) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999)) (emphasis in original).

Oakwood seeks to amend its complaint to add a cause of action for violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"). The deadline for amending pleadings, as set forth in the scheduling order, has passed. ECF No. 37. Additionally, Oakwood previously amended its complaint once as a matter of course. Therefore, Oakwood must satisfy both the Rule 16(b) and Rule 15(a) standards to amend its complaint. The court considers each standard in turn.

### 1. Good Cause Standard

Oakwood argues that "good cause exists because Oakwood discovered for the first time approximately [three weeks prior to filing its motion] that SWK had recently failed to implement Acumatica ERP for another customer." ECF No. 45 at 5. Oakwood refers to the same discovery of information that it argued justified its motion to compel. Specifically, Oakwood argues that it learned from Powell's deposition testimony that Arch-I-Tech was allegedly forced to back away from its Acumatica implementation project with SWK. Counsel for Oakwood stated in an affidavit that he subsequently learned that the circumstances and events surrounding Arch-I-Tech and SWK's failed relationship were "substantially similar to the circumstances and events that Oakwood experienced with SWK." ECF No. 45-2, Joyce Aff. ¶ 12. According to Oakwood, the newly-discovered information suggests that SWK's conduct "is capable of repetition, has

been repeated, and adversely affects the public interest," thus supporting a cause of action under the SCUTPA.[1]  ECF No. 45-1 ¶ 94.

SWK responds by first arguing that Oakwood counsel's affidavit, which details the information Wood relayed, is hearsay and should be disregarded.  However, courts have determined that when ruling on the viability of a motion to amend, the court is not bound by the Federal Rules of Evidence.  See Bowers v. Am. Heart Ass'n, Inc., 513 F. Supp. 2d 1364, 1368–69 (N.D. Ga. 2007) (considering hearsay testimony in the disposition of the plaintiff's motion to amend because there is "no case law . . . requiring that a plaintiff submit admissible evidence or reduce otherwise inadmissible hearsay to an admissible form when filing a motion to amend the complaint"); cf. CDS Family Tr. v. Martin, 2020 WL 758129, at *3 (D. Md. Feb. 14, 2020) (finding that when determining

---

[1] SWK does not dispute that the newly-discovered information is the genesis of Oakwood's new SCUTPA claim—an argument other litigants have raised when contesting good cause to amend.  See, e.g., Erie Ins. Prop. & Cas. Co. v. Johnson, 2010 WL 5343316, at *3 (S.D. W. Va. Dec. 20, 2010) (finding that the good cause standard was met because there was sufficient evidence that the counterclaimants would not have asserted their new claims without newly-disclosed evidence).  In any event, Oakwood has credibly shown that it would not have brought its proposed SCUTPA claim without this new information.  To recover in an action under SCUTPA, the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the plaintiff suffered actual, ascertainable damages as a result of the conduct; and (3) the unfair or deceptive act affected public interest.  S.C. Code Ann. § 39-5-10, et seq.; see Havird Oil Co. v. Marathon Oil Co., 149 F.3d 283, 291 (4th Cir. 1998).  To satisfy the third element, the plaintiff must establish that members of the public were adversely affected by the allegedly unfair conduct, which in turn requires showing that the conduct has the potential for repetition.  See Jefferies v. Phillips, 451 S.E.2d 21, 23 (S.C. Ct. App. 1994) (citation omitted); York v. Conway Ford, 480 S.E.2d 726, 728 (S.C. 1997).  "An unfair or deceptive act or practice that affects only the parties to a trade or a commercial transaction is beyond [SCUTPA]'s embrace . . . ."  Noack Enters., Inc. v. Country Corner Interiors of Hilton Head Island, Inc., 351 S.E.2d 347, 349–50 (S.C. Ct. App. 1986).  "Otherwise every intentional breach of contract within a commercial setting would constitute an unfair trade practice . . . ."  Ardis v. Cox, 431 S.E.2d 267, 271 (S.C. Ct. App. 1993).  Here, without knowledge that another customer was allegedly harmed, Oakwood would not have known to bring the claim in its original complaint.

futility of an amendment, Federal Rules of Evidence 702 and 703 did not serve to preclude a report in support of a motion to amend). If Oakwood's SCUPTA claim survives to the summary judgment stage, and Oakwood "continues to rely upon inadmissible hearsay in support of this claim, [SWK] may object to this evidence [then]." See Bowers, 513 F. Supp. 2d at 1369.

As such, the only remaining question at this stage is whether the information derived from Powell, and then clarified by Wood, is enough to constitute good cause. The court finds that it is. "Courts in this circuit . . . have routinely concluded that new information uncovered during the course of discovery constitutes good cause sufficient to satisfy the rigors of Rule 16, when such information is relayed to the Court promptly and diligently." Brightview Grp., LP v. Glynn, 2022 WL 743937, at *11 (D. Md. Mar. 11, 2022) (finding no good cause where the plaintiff waited "more than a year" to assert its claims). Oakwood filed this motion approximately three weeks after the discovery of the information, which courts have found is sufficiently diligent. See U.S. Home Corp. v. Settlers Crossing, LLC, 2012 WL 3536691, at *6 (D. Md. Aug. 14, 2012) (collecting cases where seeking leave to add claims two-and-half weeks and six days after learning about the predicate facts was sufficient to meet the good cause standard, but an eight-month delay was not sufficient). Thus, Oakwood has established good cause.

### 2. Motion to Amend Standard

Even though Oakwood has met the good cause standard, Oakwood must still meet the requirements for amendment under Rule 15(a) because it has already filed one amendment as a matter of course. In its response to the motion, SWK argues that it will be unduly prejudiced by the proposed amendment because if the court allows the

SCUTPA cause of action to proceed, it "will blow open the doors of discovery and require this Court to litigate a case within a case." ECF No. 49 at 3.

The court finds that amending the complaint would not be prejudicial to SWK, there is no bad faith on the part of Oakwood, and the amendment is not futile. As the court explained at the hearing, this case is not on the precipice of trial such that SWK would be unfairly prejudiced by extended discovery. Moreover, the court does not find that any such prejudice outweighs the good cause shown for bringing the claim, as discussed in the court's analysis under Rule 16(b).

The parties also dispute the necessary scope of discovery if Oakwood is permitted to amend the complaint. In its motion, Oakwood argues that discovery on the issue will be limited, and it "does not foresee the need to conduct any additional depositions."[2] ECF No. 45 at 2. However, on this point, the court agrees with SWK that if the court allows Oakwood to amend its complaint to add a cause of action for a violation of the SCUTPA, Oakwood should be provided the opportunity to subpoena documents and communications in Arch-I-Tech and Tom Fouts Tire's possession and to depose additional witnesses. Even if Oakwood has limited discovery needs from those companies by virtue of its access to them, SWK should be provided with an opportunity to conduct discovery to support its defenses to Oakwood's SCUTPA claim. As the court stated at the hearing, the parties are in a better position to establish the new deadlines and parameters of such discovery, so the court instructs the parties to confer and file a joint discovery order reflecting the considerations above. In sum, the court grants Oakwood's

---

[2] Oakwood appears to acknowledge in its reply that new depositions will be necessary, but it maintains that, at most, only one or two more depositions will be necessary. ECF No. 53 at 5.

13

motion for leave to file a second amended complaint pending a discovery order from the parties.

### C. SWK's Motion for Partial Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Id. at 255.

SWK moves for summary judgment in its favor on Oakwood's causes of action for (1) fraud and negligent misrepresentation; (2) fraud in the inducement; and (3) rescission of contract.  The court considers each cause of action in turn.

### 1. Fraud and Negligent Misrepresentation

First, SWK argues that the court should grant summary judgment in its favor on Oakwood's third cause of action for fraud and negligent misrepresentation.  To prevail on a cause of action for "fraud and deceit, based upon misrepresentation," a plaintiff must prove: "(1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; [and] (9) the hearer's consequent and proximate injury."  M.B. Kahn Constr. Co. v. S.C. Nat'l Bank of Charleston, 271 S.E.2d 414, 415 (S.C. 1980).  "Failure to prove any one of the foregoing elements is fatal to recovery." Id. (citation omitted).

Negligent misrepresentation requires a plaintiff to prove: (1) the defendant made a false representation, (2) the defendant had a pecuniary interest in making the representation, (3) the defendant owed a duty of care to see that he communicated truthful information, (4) the defendant breached that duty by failing to exercise due care, (5) the plaintiff justifiably relied on the representation, and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation.  Brown v. Stewart, 557 S.E.2d 676, 680–81 (S.C. Ct. App. 2001) (citation omitted).  "The key difference between fraud and negligent misrepresentation is that 'fraud requires the conveyance of a known falsity, while negligent misrepresentation is predicated upon transmission of a negligently made false statement.'"  Armstrong v. Collins, 621 S.E.2d 368, 375–76 (S.C. Ct. App. 2005) (quoting Brown, 557 S.E.2d at 681).

SWK first argues that Oakwood has failed to provide any specific misrepresentations or fraudulent statements that were made by SWK. The court agrees. While it was previously sufficient for Oakwood to merely allege, for example, that SWK made representations that its "internal resources [were] capable of using the Acumatica development and customization tool," Amend. Compl. ¶ 67, relying on those same general allegations is not sufficient at the motion for summary judgment stage. In its response to the motion for partial summary judgment, Oakwood fails to specify the content of the allegedly false statements. It states, for example, that "SWK held itself out to Oakwood as having the internal resources, experience, bandwidth, skills, and capability to manage, implement, develop, and customize Acumatica ERP." ECF No. 57 at 20. This is a general allegation about the statements SWK supposedly made, and courts have previously dismissed fraud claims that are untethered to any specific false statements. See Creaturo v. Wells Fargo Bank NA, 2012 WL 13005318, at *5 (D.S.C. Apr. 30, 2012) (dismissing fraud claim that failed to allege the time, location, or manner in which the representations were made and did not identify the employee who made the representation); Mincey v. World Savings Bank, FSB, 614 F. Supp. 2d 610, 626 (D.S.C. 2008) ("[A] plaintiff alleging fraud must make particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements."). When asked during the hearing to point to particular statements made by SWK, the only ones that Oakwood pointed to were in the Agreement and SOW. However, those statements do not encompass all the allegedly false representations alleged in the complaint, and as the court discusses below, the statements in the Agreement and SOW are not actionable.

Similarly, the court finds that Oakwood has failed to provide sufficient evidence of a false representation, which is an element of both fraud and negligent misrepresentation.  Oakwood argues in its motion that "[t]here is sufficient evidence in the record confirming that this representation was false at the time it was made."  ECF No. 57 at 20.  Specifically, Oakwood suggests that there is evidence in the record that SWK was aware it was understaffed, it was experiencing "growing pains" such that it would need to farm out work to offshore companies, and it did not have a competent development team that understood how to customize Acumatica ERP.  ECF No. 57 at 20.  But fatally, Oakwood fails to point to any specific evidence in the record, if it exists.  "When a motion for summary judgment is made . . . , an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see also Dowty Comms. Inc. v. Novatel Comput. Sys. Corp., 817 F. Supp. 581, 595 (D. Md. 1992) (determining that if a motion for partial summary judgment sufficiently shifts the burden of production to the nonmovant, it is not enough to oppose the motion "with conclusory assertions about the available evidence").  Oakwood fails to provide affidavits, deposition transcripts, or other evidence supporting its assertions that SWK's statements were false; indeed, even the quoted text about SWK's supposed "growing pains" is not supported by a citation.

Even if the court were to provide Oakwood with the benefit of considering its assertions as evidence, Oakwood has failed to prove that SWK's statements are actionable.  A fraudulent or negligent misrepresentation claim is subject to summary

judgment where the plaintiff has failed to establish a genuine issue of fact as to one or more of the elements.  See, e.g., Osborn v. Univ. Med. Assocs. of Med. Univ. of S.C., 278 F. Supp. 2d 720, 734 (D.S.C. 2003) (finding summary judgment regarding a fraud claim appropriate because the plaintiff had "failed to establish a genuine issue of fact as to whether any defendant acted with fraudulent intent").  A "false representation must be predicated upon misstatements of fact rather than upon an expression of opinion, an expression of intention or an expression of confidence that a bargain will be satisfactory." Bishop Logging Co. v. John Deere Indus. Equip. Co., 455 S.E.2d 183, 187 (S.C. Ct. App. 1995) (citing Winburn v. Ins. Co. of N. Am., 339 S.E.2d 142 (S.C. Ct. App. 1985)). Similarly, a claim for negligent misrepresentation "cannot ordinarily be based on unfulfilled promises or statements as to future events."  Fields v. Melrose Ltd. P'ship, 439 S.E.2d 283, 285 (S.C. Ct. App. 1993); see also Winburn, 339 S.E.2d at 147 ("Evidence of a mere broken promise is not sufficient to prove negligent misrepresentation any more than it is sufficient to prove fraudulent misrepresentation."). SWK argues that each of the false representations that the complaint alleges it made were expressions of opinion and confidence that its work would be satisfactory.  For example, Oakwood claims that SWK misrepresented its skill, knowledge, and experience with regard to its ability to implement Acumatica.  When deposed, however, Oakwood's corporate representative agreed that such statements were opinions or beliefs, and SWK had simply overestimated its ability to perform.  See ECF No. 48-4, Stewart Dep. at 93:22–94:16.  Viewed in the light most favorable to Oakwood, a reasonable juror could certainly conclude that SWK had logistical issues; however, no reasonable juror could find that the SOW or Agreement were anything but representations about a future

promise to implement Acumatica ERP.  Thus, those statements are not actionable.  See Bishop Logging, 455 S.E.2d at 187.

Finally, Oakwood acknowledges that "South Carolina courts have held that fraudulent representations must concern existing or past facts and not statements as to future events."  ECF No. 57 at 22.  In response, Oakwood submits three reasons why summary judgment in SWK's favor is nonetheless inappropriate.  First, Oakwood argues that an exception applies when the future promises were part of a general design or plan to induce the plaintiff into entering into the contract documents.  A future promise may be fraudulent if "such a future promise was part of a general design or plan existing at the time, made as part of a general scheme to induce the signing of a paper or to make one act, as he otherwise would not have acted, to his injury."  Bishop Logging, 455 S.E.2d at 187 (quoting Coleman v. Stevens, 117 S.E. 305, 307 (1923)).  In support of its argument, Oakwood cites the declarations of Greg Butler—Oakwood's president—and Lawrence Perkins—an employee at the consulting firm employed by Tom Fouts Tire—claiming that "a different customer"—presumably, Tom Fouts Tire—"was duped and damaged by SWK" under "circumstances [that] have . . . significant parallels."  ECF No. 57 at 23. Oakwood also argues that Arch-I-Tech was subjected to a similar scheme.  However, Oakwood has failed to present a genuine dispute of material fact regarding a general design or plan to induce Oakwood into entering the Agreement.  Under that issue, the only pertinent factual inquiry is whether SWK used future promises to induce Oakwood into entering the contract.  Oakwood cites no legal authority supporting its view that evidence of conduct between SWK and other customers may be applied to its relationship with Oakwood.  In fact, such evidence is likely inadmissible character evidence.  See

19

Fed. R. Evid. 404; Doe v. Meron, 929 F.3d 153, 165 (4th Cir. 2019) (citing Fed. R. Civ.

P. 56(c)(2)) ("[A] party opposing summary judgment must offer evidence that could be

presented in a form that would be admissible at trial.").  In the absence of any direct

evidence of a general design or plan directed at Oakwood, the court rejects this argument.

Second, Oakwood argues another exception applies when the prediction of future

events is made by the party with superior knowledge.  "A false prediction concerning

future events made by one with superior knowledge of those events may constitute a

fraudulent misrepresentation."  Miller v. Premier Corp., 608 F.2d 973, 981 (4th Cir.

1979); see also Sorin Equip. Co., Inc. v. The Firm, Inc., 474 S.E.2d 819, 824 (S.C. Ct.

App. 1996) (citing Miller with approval).  The court rejects this argument as well.  The

District of Maryland, applying Maryland law but relying on the exception as articulated

in Miller, clarified that the exception is not applicable where the plaintiff did not rely on

the future prediction as "the equivalent of a factual assertion."  Rizika v. Merrill Lynch,

Pierce, Fenner & Smith, Inc., 1981 WL 1619, at *5 (D. Md. Jan. 28, 1981) (citing Miller,

608 F.2d at 921).  As discussed earlier, Oakwood's representative acknowledged that the

statements made by SWK were opinions or beliefs.  As such, there is no dispute of

material fact that Oakwood did not rely on SWK's statements as the equivalent of facts,

and "[a]bsent such reliance, the Miller exception is inapplicable."  Id.

Third, Oakwood argues that even if SWK did not make any false representations

about past facts, SWK fraudulently concealed and failed to disclose material facts.  Under

South Carolina law, "[n]ondisclosure becomes fraudulent only when it is the duty of the

party having knowledge of the facts to uncover them to the other."  Doe 2 v. Associated

Press, 331 F.3d 417, 420 (4th Cir. 2003) (citing Warr v. Carolina Power & Light Co., 115

S.E.2d 799, 802 (S.C. 1960)).  Such a duty to disclose can arise in only three cases: (1) where there exists a preexisting definite fiduciary relation between the parties; (2) where one party either expressly or (by virtue of the specific circumstances of the case) implicitly reposes a trust and confidence in the other with reference to the particular transaction in question; or (3) where the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure.  Id. (citing Jacobson v. Yaschik, 155 S.E.2d 601, 605 (S.C. 1967)).  Viewed in the light most favorable to Oakwood, the nature of the contract between Oakwood and SWK was intrinsically fiduciary.  According to Oakwood, SKW breached that duty by failing to disclose the fact that it was not feasible for it to perform the customizations that would allow Oakwood to create a "multiple pick list," which would allow Oakwood to process multiple open shipments on a single sales order.  ECF No. 59-9.  While the court determined above that Oakwood failed to present evidence of a false statement, here, Oakwood has provided sufficient evidence of a material nondisclosure.  Oakwood submits emails and deposition excerpts indicating that SWK learned about its inability to provide the multiple pick list customization but failed to disclose it.  For example, one SWK employee testified that he thought "there should have been some kind of conversation [about the feasibility], if there wasn't."  ECF No. 57-4, Powell Dep. at 112:14–23.  Another SWK employee agreed it seemed "necessary" that "somebody from SWK probably should have reached out at that point in time."  ECF No. 57-6, Buddecke Dep. at 81:9–21.

SWK attempts to refute Oakwood's claims about the infeasibility of the customization with deposition testimony from an employee at TechRiver—the

information technology firm hired by Oakwood to ultimately manage the Acumatica ERP implementation. ECF No. 60 at 5. That testimony suggests that Acumatica ERP was compatible with Oakwood's internal resources and that the implementation was technically feasible. ECF No. 48-9, Napelenok Dep. at 28:16–21. However, it is not clear that the TechRiver employee's testimony specifically pertains to the multiple pick list customization. Even if that were the case—and the evidence proffered by SWK weighed against Oakwood's evidence—a reasonable juror could still conclude that SWK failed to disclose the infeasibility and that the information was material. Therefore, the court grants SWK's motion for summary judgment in SWK's favor as to Oakwood's fraud and negligent misrepresentation claims but will allow Oakwood's claim for fraudulent nondisclosure to proceed.

### 2. Fraud in the Inducement

Oakwood's fourth cause of action alleges that SWK fraudulently induced Oakwood to enter into the Agreement and SOW by knowingly making false and material representations of fact. SWK argues that summary judgment is warranted in its favor on Oakwood's fraud in the inducement claim. To establish a claim for fraud in the inducement, a plaintiff, in addition to proving all nine elements of fraud, must demonstrate "(1) that the alleged fraudfeasor made a false representation relating to a present or preexisting fact; (2) that the alleged fraudfeasor intended to deceive him; and (3) that he had a right to rely on the representation made to him." Moseley v. All Things Possible, Inc., 694 S.E.2d 43, 45 (S.C. Ct. App. 2010) (quoting Darby v. Waterboggan of Myrtle Beach, Inc., 344 S.E.2d 153, 155 (S.C. Ct. App. 1986)). Since the court found that Oakwood has failed to establish the elements of its fraud claim where it is predicated

on statements made prior to signing the Agreement and SOW, Oakwood cannot establish fraud in the inducement.  See Jackson v. Smith & Downey, PA, 2018 WL 4560534, at *5 (D.S.C. June 18, 2018) (dismissing fraud in the inducement claim after determining that the plaintiff failed to state a fraud claim).  The court thus grants summary judgment in SWK's favor on this cause of action.

### 3.   Rescission of Contract

SWK argues that summary judgment is warranted in its favor on Oakwood's first cause of action for rescission of contract.  "Rescission is an equitable remedy that attempts to undo a contract from the beginning as if the contract had never existed." Mortg. Elec. Sys., Inc. v. White, 682 S.E.2d 498, 502 (S.C. Ct. App. 2009).  "A breach of contract claim warranting rescission of the contract must be so substantial and fundamental as to defeat the purpose of the contract."  Brazell v. Windsor, 682 S.E.2d 824, 826 (S.C. 2009) (citing Rogers v. Salisbury Brick Corp., 382 S.E.2d 915, 917 (S.C. 1989)).  The "right of rescission exists in three cases: (1) Where the right to return the property is a part of the original contract; (2) where there is fraud; [or] (3) where there has been an entire failure of consideration."  Eureka Elastic Paint Co. v. Bennett-Hedgpeth Co., 67 S.E. 738, 740 (S.C. 1910).  But "[i]n the absence of fraud, rescission is appropriate only if both parties can be returned to the status quo prior to the contract." Id. (citing King v. Oxford, 318 S.E.2d 125, 129 (S.C. Ct. App. 1984)).

Oakwood previously alleged in its complaint that rescission is necessary because SWK fraudulently induced Oakwood to enter the Agreement.  Amend. Compl. ¶ 53.  As discussed above, Oakwood has failed to show that there is more than a scintilla of evidence supporting its claims of fraud as to the statements made prior to the signing of

the Agreement. In its response, Oakwood shifts its focus to arguing that the entire purpose of the contract was defeated; in other words, that there was an entire failure of consideration.[3] Regarding Oakwood's latest argument, the court finds that there is a genuine issue of material fact as to whether Oakwood failed to receive any benefit of the contract, and whether such a failure was substantial and fundamental. While SWK argues that through its work, SWK provided Oakwood with a blueprint to complete the implementation project, a reasonable juror could ultimately conclude that the entire purpose of the contract was in fact defeated.[4]

SWK also argues that rescission is only an adequate remedy "where there is no adequate remedy at law." Id. at 25 (quoting ZAN, LLC, 751 S.E.2d at 669). Certainly, if Oakwood succeeds in proving actual damages under its breach of contract claim, it will have an adequate remedy at law. See Branche Builders, Inc. v. Coggins, 686 S.E.2d 200, 202 (S.C. Ct. App. 2009) ("An action for breach of contract seeking money damages is an action at law.") (citation omitted). However, the court finds that it would be premature to summarily rule on Oakwood's rescission of contract claim based on that reason. If the jury finds SWK liable but does not find that Oakwood incurred any actual damages, Oakwood may still be able to succeed under a theory of rescission.

---

[3] Oakwood argues that alternatively, its rescission claim should survive under New Jersey law as well. While there is a choice-of-law provision in the Agreement, as the court explained in its prior order, the parties waived the right to assert that the provision applies. ECF No. 40 at 8–9.

[4] Neither party directly addresses whether it would be possible to return the parties to the status quo. "[W]hether it would be fair and equitable to rescind [a] contract is a different issue from whether Petitioners have sufficiently alleged a material breach of contract and sufficiently alleged that rescission would allow them to be restored to the status quo." ZAN, LLC v. Ripley Cove, LLC, 751 S.E.2d 664, 670 (S.C. Ct. App. 2013) (alterations in original). Since the parties do not address it, the court does not address it.

In sum, the court grants in part and denies in part SWK's motion for partial summary judgment. Specifically, the court finds that summary judgment is warranted in SWK's favor on (1) Oakwood's fraud/negligent misrepresentation claim as to SWK's allegedly false statements and (2) Oakwood's fraud in the inducement claim, but the court finds that Oakwood's claims for (1) fraud based on nondisclosure and (2) rescission of contract remain pending.

### D. Oakwood's Motion in Limine

Oakwood requests that the court exclude the report and "certain testimony" of SWK's expert, Phil Sim ("Sim"). On November 15, 2021, SWK designated Sim as an expert witness. Sim is a partner at Blytheco, Inc., a company that focuses on Enterprise Resource Planning ("ERP") implementation and Customer Relationship Planning ("CRM") solutions. According to the expert designation, Sim is an expert in those fields. ECF No. 50-1.

The purpose of a motion in limine is to obtain a preliminary ruling on the admissibility of a particular evidentiary matter. Luce v. United States, 469 U.S. 38, 40 n.2 (1984). A court will exclude evidence on a motion in limine only if the evidence is "clearly inadmissible for any purpose." Hall v. Sterling Park Dist., 2012 WL 1050302, at *2 (N.D. Ill. Mar. 28, 2012). "In assessing the admissibility of expert testimony, a district court assumes a 'gatekeeping role' to ensure that the 'testimony both rests on a reliable foundation and is relevant to the task at hand.'" In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig., 892 F.3d 624, 631 (4th Cir. 2018) (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993)). The court has a "special obligation" to ensure that expert testimony is relevant and reliable. Kumho

Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999).  However, "'the trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system,' and consequently, 'the rejection of expert testimony is the exception rather than the rule.'" United States v. Stanley, 533 F. App'x 325, 327 (4th Cir. 2013) (per curiam) (citing Fed. R. Evid. 702).

Oakwood argues that two types of opinions rendered by Sim should be excluded. The court considers each argument in turn, ultimately determining that Sim will be allowed to testify to the technical elements of the implementation but not the so-called "people" or "cultural" issues at Oakwood.

### 1. Technical Aspects of the Implementation

First, Oakwood argues that Sim is not qualified to provide an opinion on "any technical-specific component" of SWK's implementation project or "SWK's capability or experience to deliver the same."  ECF No. 50 at 6.  Oakwood asserts that Sim admitted during his deposition that he has no knowledge of the specific requirements, business processes, or customizations that would be involved in Oakwood's transition from Sage 500 to Acumatica ERP.  Among other passages, Oakwood points out that Sim testified: "I truly don't know their business processes," "I have not looked at the Sage system specifically," and "I do not know the details of those customizations."  ECF No. 50-3, Sim Dep. at 60:18–21, 119:15–19, 120:12–18.  Similarly, Oakwood argues that Sim is not qualified to provide an opinion on SWK's implementation because he has no knowledge about the qualifications and technical capacities of the SWK staff who handled the Oakwood implementation.  Oakwood does not specify which prong of Federal Rule of Evidence 702 that Sim allegedly fails to satisfy, but under either potential

ground, Oakwood's argument fails. First, Rule 702(a) requires that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." But unlike lay witness testimony, which must be based on personal knowledge, experts are "permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." Daubert, 509 U.S. at 592. Sim's report indicates that he has seen "countless" methods of implementation, and he possesses industry knowledge on why implementations fail. ECF No. 50-2 at 5. While Sim may not be personally familiar with Oakwood's internal systems and the necessary customizations, he can opine on whether SWK was capable of implementing Acumatica ERP. Whether Sim's testimony about SWK's skills or technical experience is specific enough to Oakwood's systems goes more to the weight of Sim's testimony than its admissibility.

Oakwood also argues that Sim's expert testimony is unreliable because there is too great of an analytical gap between the data and opinion offered. The court construes this argument as asserting that under Rule 702(b), Sim's testimony is not based on sufficient facts or data. According to SWK, however, Sim reviewed over 200 documents in preparing his report, and these documents included emails about Oakwood's required customizations. The court finds that such facts were sufficient for Sim to render his opinion. To the extent that Oakwood argues Sim should have considered other facts, such an argument once again goes to the weight of the opinion, not its admissibility. See Sparks v. Gilley Trucking Co., Inc., 992 F.2d 50, 54 (4th Cir. 1993). Rule 702's guiding policy favors the admission of expert testimony, and "the trial court's role as a gatekeeper

is not intended to serve as a replacement for the adversary system." Stanley, 533 F.

App'x at 327.

### 2. People, Cultural, or Execution Issues

Second, Oakwood argues that Sim should not be allowed to opine that Oakwood

did not contribute to the project due to the company's "people, cultural, or execution

issues." ECF No. 50 at 9 (quoting Sim Report at 5–6). At the hearing, counsel for SWK

appeared surprised to learn that Sims purportedly rendered an opinion on the so-called

people or cultural factors. The parties resolved the issue at the hearing, with counsel for

SWK representing that SWK did not intend to have Sim testify on anything other than the

technical aspects of the implementation. As such, the court considers the issue resolved,

but for clarity, it observes that to the extent Sim were to testify on people or cultural

issues, his testimony would be excluded under both Rule 702(a) for lack of scientific,

technical, or other specialized knowledge and Rule 702(c) for lack of reliable principles

and methods. While SWK has demonstrated that Sim is qualified to render an opinion on

SWK's capacity and ability to implement Acumatica, Sim does not have a demonstrated

background in analyzing the people or cultural factors at a company. Sim does not have

a background in human resources or psychology, and SWK has not shown how his

technical knowledge would translate to knowledge about a company's cultural issues.

Even if SWK provided Sim with emails that offer a glimpse into the Oakwood

employees' conduct, SWK has not demonstrated that reviewing the emails alone is a

sufficient methodology. See Keystone Transp. Sols., LLC v. Nw. Hardwoods, Inc., 2019

WL 1756292, at *7 (W.D. Va. Apr. 19, 2019) (finding that merely reviewing documents

and providing a subjective narrative of events is not a proper expert methodology).

Therefore, the court adopts the parties' resolution from the hearing and grants in part and denies in part the motion. Sim will be permitted to testify about SWK's technical qualifications and ability to implement Acumatica to rebut Oakwood's assertion that SWK was incapable of doing so.

### E. SWK's Motion to Quash Subpoena to Acumatica

Next, SWK moves to quash Oakwood's renewed subpoena to Acumatica. Oakwood originally served its subpoena duces tecum to Acumatica on October 26, 2021. ECF No. 52-1. Acumatica completed its document production on February 1, 2022. As discussed under Oakwood's motion for leave to amend the complaint, the Third Amended Consent Scheduling Order—dated February 3, 2022—provided that written discovery had been completed as of that date. On March 23, 2022, Oakwood issued a renewed subpoena, asserting that Acumatica's prior document production was deficient.

SWK argues that no good cause exists to modify the scheduling order to allow for the additional document productions. As it did under its motion to compel, Oakwood responds that the amended scheduling order contemplates such written discovery when the need for it is identified after depositions have been taken.[5] Again, the third consent

---

[5] Oakwood also argued, in response to SWK's motion to quash Oakwood's subpoena to Greytrix, that SWK lacked standing to bring a motion to quash on behalf of a nonparty. Even if the court were to consider that argument under this motion, the court finds that it is not reason alone to deny the motion. Federal Rule of Civil Procedure 45 permits the subpoenaed nonparty to quash or modify a subpoena where it, inter alia, "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Although SWK's motions are styled as motions to quash, the court does not find that SWK is necessarily bringing its motions under Rule 45. Rather, it is raising them based on Oakwood's perceived failure to adhere to the amended scheduling order's deadlines, and SWK may attempt to enforce the deadlines under the scheduling order. Another court has taken this exact approach. In Anderson v. Procter & Gamble Paper Products Co., the Eastern District of Wisconsin found that although the defendant "styled its motion as a motion to quash, the grounds it

amended scheduling permits limited written discovery "to the extent that any records or information is identified in depositions that were requested during written discovery and not previously provided." ECF No. 43. Oakwood argues that there were "many revelations" during the depositions that revealed the need for additional discovery from Acumatica. ECF No. 59 at 5. First, Oakwood returns to its argument that it learned from Powell that SWK allegedly failed to implement Acumatica ERP for Arch-I-Tech. Second, Oakwood states it learned from a development manager at SWK, Rebecca Mergner ("Mergner"), that SWK completed a "support ticket" with Acumatica. Id. at 6. Third, Oakwood claims that it learned from a practice manager at SWK, Jeb Buddecke ("Buddecke"), that SWK brought in third-party companies to help with development and customization during implementation because of its own lack of experience and bandwidth.

The court finds that Oakwood has demonstrated that the renewed subpoena to Acumatica is permitted under the third consent amended scheduling order. Oakwood credibly argues that the new information derived from the depositions led to the realization that Acumatica had not provided all relevant documents under the first subpoena. As the court discussed in the context of the motion to compel, "new information uncovered during the course of discovery constitutes good cause" for amendments to scheduling orders, and the same holds true for liberally construing the

---

cites do not fall within those enumerated within Rule 45(c)(3)(A)." 2013 WL 5651802, at *1 (E.D. Wis. Oct. 15, 2013). Instead, it sought to bar a deposition because it was outside the scheduling order, and accordingly, the court "construe[d] the motion to quash as a motion to enforce the scheduling order." Id. Like the court did in Anderson, the construes the motion to quash as a motion to enforce the scheduling order, but unlike the court in Anderson, the court finds that Oakwood has shown good cause and denies the motion.

amended scheduling order here. See Glynn, 2022 WL 743937, at *11. The court also finds that Oakwood did not delay an unreasonable time before issuing the renewed subpoena to Acumatica. The parties deposed Buddecke on February 4, 2022, ECF No. 57-5 at 1; Mergner on February 10, 2022, ECF No. 57-6 at 1; and Powell on February 17, 2022, ECF No. 57-4 at 1. Oakwood issued the renewed subpoena a little over a month after the last deposition from which it claimed to have learned new information. As the court stated above, since a discovery extension would not unfairly prejudice the parties, the court finds that this additional discovery will not prejudice nonparties like Acumatica either. The court thus denies SWK's motion to quash the subpoena to Acumatica, and SWK will be permitted to file a renewed subpoena to Acumatica seeking records or information in their possession that were identified in depositions.

**F.  SWK's Motion to Quash Subpoena to Greytrix**

Finally, SWK moves to quash the subpoena issued to Greytrix for similar reasons raised in its motion to quash the subpoena to Acumatica. As it did before, Oakwood responds that it is entitled to limited written discovery based on information gleaned during the litigation. Oakwood previously requested, in its interrogatories, documents related to services or work performed by third parties. According to Oakwood, SWK failed to identify Greytrix in its responses, save for the mention of the company in one email chain out of 7,000 documents. On February 10, 2022, Oakwood deposed Merger, a development manager at SWK. Oakwood questioned Mergner on the identity, role, and involvement of Greytrix based on that email chain, and Oakwood learned from the deposition that Greytrix was an offshore third-party contractor that worked on customization for Oakwood.

31

At the hearing, counsel for SWK agreed to withdraw its motion to quash the subpoena to Greytrix. The motion is therefore moot, and Oakwood will be permitted to issue a subpoena to Greytrix seeking records or information relevant to its claims.

### III.   CONCLUSION

For the reasons set forth above, the court (1) holds the motion to compel **IN ABEYANCE**, (2) **GRANTS** the motion for leave to file a second amended complaint, (3) **GRANTS IN PART** and **DENIES IN PART** the motion for partial summary judgment, (4) **GRANTS IN PART** and **DENIES IN PART** the motion in limine to exclude certain expert testimony, (5) **DENIES** the motion to quash the subpoena to Acumatica, and (6) **FINDS AS MOOT** the motion to quash the subpoena to Greytrix.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 10, 2022**
**Charleston, South Carolina**

32