**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | | |
|---|---|---|
| OAKWOOD PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 9:20-cv-04107-DCN |
| vs. | ) | |
| | ) | |
| SWK TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| OAKWOOD PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 9:22-cv-01538-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| ACUMATICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

The following matter is before the court on defendant SWK Technologies, Inc.'s ("SWK") motion to alter or amend order, ECF No. 68, motion for protective order and to claw back inadvertently produced documents, ECF No. 77; and plaintiff Oakwood Products, Inc. a/k/a Oakwood Chemical's ("Oakwood") motion to compel, ECF No. 74. For the reasons set forth below, the court clarifies its prior order, grants in part and denies in part the motion to compel, and grants in part and denies in part the motion for protective order.

## I. BACKGROUND

This action arises out of a breach of contract dispute between Oakwood and SWK. SWK is an information technology consulting company that provides enterprise

resource planning ("ERP") and accounting software products and consulting services, among other services.  It assists with the implementation of third-party software products, including Sage 500 and Acumatica ERP, which are business management software programs that assist companies with their accounting, supply chain, and other needs. Defendant Acumatica, Inc. ("Acumatica") is the developer of Acumatica ERP. Acumatica has no sales force of its own, so it partners with companies like SWK and expressly licenses and permits them to market, license, sell, and implement its software products, including Acumatica ERP.  Oakwood Prods. v. Acumatica, Inc., 9:22-cv-01538-DCN (May 13, 2022), ECF No. 1 ¶¶ 18–19.

Oakwood is a South Carolina corporation that operates a fine organics manufacturing facility in North Estill, South Carolina.  On or around January 21, 2019, SWK and Oakwood entered into a Statement of Work ("SOW") in which SWK agreed to transition Oakwood's business management software from Sage 500 to Acumatica ERP. The SOW was accompanied by a Master Services Agreement (the "Agreement"), which was signed by both parties on or around January 28, 2019.

According to Oakwood, during the engagement, SWK failed to identify and address several issues with the Acumatica ERP implementation in a suitable manner. These alleged deficiencies included issues with the program speed and with its shipping and pricing features, which were crucial to Oakwood's business.  Oakwood also claims that the transition from Sage 500 to Acumatica was delayed due to the SWK's project managers' lack of technical proficiency in implementing the software.  Fourteen months after the project start date, SWK had yet to complete the transition.  As a result, Oakwood hired a third-party vendor, TechRiver, LLC ("TechRiver"), to analyze the incomplete

configuration of Acumatica ERP.  Based on TechRiver's recommendation, Oakwood

ultimately decided to upgrade its Sage 500 software using TechRiver rather than

complete the Acumatica ERP deployment with SWK.

On October 27, 2020, Oakwood filed a complaint in the Hampton County Court

of Common Pleas against SWK.  ECF No. 1-1, Compl.  On November 25, 2020, SWK

filed its notice of removal to this court.  ECF No. 1.  On September 22, 2021, Oakwood

filed an amended complaint against SWK.  ECF No. 35, Amend. Compl.  On June 10,

2022, the court issued an order ruling on six pending motions, including SWK's motion

for partial summary judgment.  ECF No. 67.  On July 6, Oakwood, with leave of the

court, filed its second amended complaint.  ECF No. 69, 2d Amend. Compl.  As a result

of the court's ruling and the second amended complaint, Oakwood's remaining causes of

action are for: (1) rescission of contract, (2) breach of contract, (3) fraudulent

nondisclosure, (4) breach of warranty, and (5) violation of the South Carolina Unfair

Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10, et seq.  Id.  On May 13,

2022, Oakwood filed a complaint against Acumatica, asserting that Acumatica had failed

to exercise appropriate control and failed to prevent SWK from marketing, licensing,

selling, and implementing Acumatica's product in situations where it was unfeasible for

use.  Oakwood Products, Inc. v. Acumatica, Inc., No. 22-cv-01538-DCN (D.S.C. May 13,

2022) (ECF No. 1 ¶ 3).  On July 21, 2022, the parties agreed to consolidate the two cases

against SWK and Acumatica into one for purposes of discovery and trial.  ECF No. 72.

On June 24, 2022, SWK filed a motion to alter or amend order.  ECF No. 68.

Oakwood responded in opposition on July 8, 2022.  ECF No. 70.  SWK did not file a

reply and the time to do so has now elapsed.  On July 29, 2022, Oakwood filed a motion

to compel.  ECF No. 74.  SWK responded in opposition on August 12, 2022.  ECF No.

78.  Oakwood did not file a reply and the time to do so has now elapsed.  On August 12,

2022, SWK filed a motion for protective order and to claw back inadvertently produced

documents.  ECF No. 77.  On August 26, 2022, Oakwood responded to the motion.  ECF

No. 81.  SWK did not file a reply and the time to do so has now elapsed.  The court held

a hearing on the motions on August 29, 2022.  ECF No. 83.  As such, the motions have

been fully briefed and are now ripe for review.

## II.  STANDARD

### A.  Motion to Compel

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by

court order,

> [p]arties may obtain discovery regarding any non-privileged matter that is
> relevant to any party's claim or defense and proportional to the needs of the
> case, considering the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to relevant information,
> the parties' resources, the importance of the discovery in resolving the
> issues, and whether the burden of expense of the proposed discovery
> outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at trial if the

discovery appears reasonably calculated to lead to the discovery of admissible evidence."

Id.  Rather, information is relevant and discoverable if it relates to "any matter that bears

on, or that reasonably could lead to other matter that could bear on, any issue that is or

may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

"The scope and conduct of discovery are within the sound discretion of the district

court."  Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th

Cir. 1995) (citing Erdmann v. Preferred Rsch., Inc. of Ga., 852 F.2d 788, 792 (4th Cir.

4

1988)); see also U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

If a party declines to comply with a discovery request, the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). An evasive or incomplete disclosure, answer, or response "must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). District courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion." Ardrey v. United Parcel Serv., 798 F.2d 679, 683 (4th Cir. 1986); In re MI Windows & Doors, Inc. Prod. Liab. Litig., 2013 WL 268206, at *1 (D.S.C. Jan. 24, 2013).

### B. Motion for Protective Order

Federal Rule of Civil Procedure 26(c) authorizes the court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense" by forbidding or limiting the scope of discovery. "The standard for issuance of a protective order is high," Wellin v. Wellin, 211 F. Supp. 3d 793, 800 (D.S.C. 2016), order clarified, 2017 WL 3620061 (D.S.C. Aug. 23, 2017), and the movant "bears the burden of establishing good cause," Slager v. S. States Police Benevolent Ass'n, Inc., 2016 WL 4123700, at *2 (D.S.C. Aug. 3, 2016). A motion for a protective order requires the court to "weigh the need for the information versus the harm in producing it." Id. (quoting A Helping Hand, LLC v. Balt. Cnty., 295 F. Supp. 2d 585, 592 (D. Md. 2003)). In determining whether to quash a subpoena or issue a protective order, as with most matters of discovery, the court wields broad discretion. Cook, 484 F.

App'x at 812 (motions to quash); <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 36 (1984) (protective orders).

## III.  DISCUSSION

There are three pending motions before the court.  The court first briefly considers SWK's motion to alter or amend order.  The court clarifies that its prior order should state that the finding on the fiduciary nature of Oakwood and SWK's contractual relationship is a finding of law.  Next, since the documents that Oakwood seeks to compel are encompassed within the discovery requests that SWK seeks protection from, the court considers each of the discovery requests in turn.  Finally, the court discusses SWK's request to claw back documents.

### A.  SWK's Motion to Alter/Amend

SWK filed a motion styled as a motion to alter or amend the court's order dated June 10, 2022, ECF No. 67 (hereinafter, the "June Order").  ECF No. 68.  In that motion, SWK requests "clarification of one sentence contained in the [June Order]."  <u>Id.</u> at 1. Specifically, as part of the June Order, the court granted in part and denied in part SWK's motion for partial summary judgment.  In its motion for partial summary judgment, SWK moved for summary judgment on Oakwood's cause of action for fraud and negligent misrepresentation.  The court determined that SWK could not have made a fraudulent or negligent <u>representation</u> based on South Carolina's requirement that any such representation concern then-existing or past facts.  <u>See</u> ECF No. 67 at 18 (citing <u>Bishop Logging Co. v. John Deere Indus. Equip. Co.</u>, 455 S.E.2d 183, 187 (S.C. Ct. App. 1995) and <u>Fields v. Melrose Ltd. P'ship</u>, 439 S.E.2d 283, 285 (S.C. Ct. App. 1993)).  However, the court further determined that there was a genuine dispute of material fact as to

whether SWK made a fraudulent <u>nondisclosure</u> by concealing and failing to disclose

certain facts when it had a duty to do so.  In reaching this conclusion, the court noted that

under South Carolina law, a duty to disclose arises under three circumstances:

> (1) where there exists a "preexisting definite fiduciary relation between the
> parties"; (2) where one party either expressly or (by virtue of the specific
> circumstances of the case) implicitly "reposes a trust and confidence in the
> other with reference to the particular transaction in question"; or (3) where
> "the very contract or transaction itself, in its essential nature, is intrinsically
> fiduciary and necessarily calls for perfect good faith and full disclosure."

<u>Doe 2 v. Associated Press</u>, 331 F.3d 417, 420 (4th Cir. 2003) (quoting <u>Jacobson v.</u>

<u>Yaschik</u>, 155 S.E.2d 601, 605 (S.C. 1967)).  As the catalyst for the instant motion, the

court then stated: "Viewed in the light most favorable to Oakwood, the nature of the

contract between Oakwood and SWK was intrinsically fiduciary."  ECF No. 67 at 21.

After determining that there was "sufficient evidence" that SWK had a duty to disclose

<u>and</u> breached that duty, the court denied the motion for summary judgment as to the

fraudulent nondisclosure claim.  <u>Id.</u>

As a preliminary matter, although SWK's motion is styled as a motion to alter or

amend, it is better characterized as a motion to clarify.  "The general purpose of a motion

for clarification is to explain or clarify something ambiguous or vague, not to alter or

amend."  <u>United States v. Philip Morris USA, Inc.</u>, 793 F. Supp. 2d 164, 168 (D.D.C.

2011) (internal quotation marks and citation omitted).  Such motions are typically

considered under Rule 60(b), rather than Rule 59(e).  <u>See</u> Fed. R. Civ. P. 60(b)(1)

(providing that courts may provide relief from orders for reasons of "mistake,

inadvertence, surprise, or excusable neglect"); Fed. R. Civ. P. 60(b)(6) (providing the

court with discretion to provide relief from an order for "any other reason that justifies

relief"); <u>see also</u> 11 Charles Alan Wright, <u>et al.</u>, Federal Practice & Procedure § 2858.1

(3d ed. 2022) (explaining that "[i]f the judicial error is a minor oversight, of the type that is hardly more than a clerical error, . . . it is held that relief can be granted" under Rule 60(b)(1)).

Turning to the motion, SWK requests that the court clarify whether the sentence was intended to "express the idea that there are material questions of fact from which a jury could conclude that the contract between Oakwood and SWK was 'intrinsically fiduciary'" or if the sentence should be read as "establish[ing] the law of the case, [i.e.,] that the contract was intrinsically fiduciary as a matter of the law." ECF No. 68 at 1–2. SWK takes no firm position on the matter and seeks clarification from the court; however, it observes that generally, "the existence of duty is a question of law to be determined by a Court." Id. at 1. In responding to the motion, Oakwood argues that the "sentence needs no clarification and should remain in the [June] Order as stated" because the sentence clearly relates to the court's finding for summary judgment purposes only. In other words, Oakwood argues that the issue is ultimately one for the jury to decide, and the parties must present evidence on the issue at trial.

The court clarifies that its ruling should interpreted as finding that SWK owed Oakwood a duty to disclose as a matter of law. Although South Carolina courts have not specified whether the existence of a duty to disclose is purely the province of the courts—at least in so many words—in other contexts, the existence of a duty or a fiduciary relationship is a matter of law for the court to decide. See Wood v. Fanslau, 2018 WL 5617943, at *3 (D.S.C. Oct. 29, 2018) (citing Houck v. State Farm Fire & Cas. Ins. Co., 620 S.E.2d 326, 329 (S.C. 2005)) (explaining that in a negligence action, the existence of a duty is a question of law for the court to decide); In re Infinity Bus. Grp.,

_Inc._, 628 B.R. 213, 244 (Bankr. D.S.C. 2021) (citing _Walbeck v. I'On Co., LLC_, 827

S.E.2d 348, 358 (S.C. Ct. App. 2019)) (same, for existence of a fiduciary duty).

Similarly, a duty to disclose would not be an issue for the jury to decide. Since "[t]he

substantive law of the case identifies which facts are material," and the court has decided

that SWK owed a duty to disclose, the only material fact in dispute for trial pertain to

whether SWK breached that duty. _Anderson_, 477 U.S. at 248.

### B. Discovery Motions

Next, SWK moves for a protective order limiting and precluding additional

discovery propounded by Oakwood in support of its SCUTPA claim. In the June Order,

the court granted Oakwood leave to file a second amended complaint based on

Oakwood's representation that it had learned, for the first time during depositions, that it

had good cause to add a cause of action for a violation of SCUTPA. By way of

background, Oakwood previously argued that it learned from SWK's senior sales

executive during his deposition that a company called Arch-I-Tech Doors, Inc. ("Arch-I-

Tech") had supposedly terminated its engagement with SWK after being dissatisfied with

its services. Oakwood then reached out to Arch-I-Tech's executive vice president, who

confirmed that Arch-I-Tech had terminated its engagement with SWK. Oakwood made

similar representations regarding its discovery of a failed project between SWK and

another company called Tom Fouts Tire ("Tom Fouts").

Oakwood subsequently filed a motion to compel and a motion for leave to amend

the complaint. In the motion to compel, Oakwood sought a supplemental response to

Document Request No. 16 in Oakwood's first requests for production, which requested

"[a]ny and all documents concerning customer complaints related to or concerning

software implementation projects performed by SWK from January 1, 2011 to the present." ECF No. 44-1 at 7. Oakwood stated that a court order was necessary because SWK was not forthcoming after previously stating that it did not maintain a customer complaint database. In its motion to amend, Oakwood asserted that the same newly-discovered information suggested that SWK's conduct "is capable of repetition, has been repeated, and adversely affects the public interest," thus supporting a cause of action under SCUTPA. ECF No. 45-1 ¶ 94. In the June Order, the court held the motion to compel in abeyance because the request, as stated, was too broad, and because Oakwood appeared to have a new request in mind based on an email exchange between counsel. But the court ultimately agreed that Oakwood could propound additional discovery despite the fact that, under the scheduling order, the time for discovery had concluded. For similar reasons, the court granted leave for Oakwood to amend its complaint.

Predictably, the court's order was not enough to stem the tide of discovery disputes. SWK argues that the June Order was limited based on Oakwood's representations that it had learned of the existence of Arch-I-Tech and Tom Fouts—the only two companies that Oakwood previously identified as companies that hired SWK to assist with Acumatica ERP implementation projects. SWK is correct that in the June Order, the court allowed Oakwood to circumvent the close of the discovery period as contemplated in the scheduling order because Oakwood demonstrated good cause based on information uncovered in depositions about Arch-I-Tech and Tom Fouts. See ECF No. 67 at 6–7 (observing that under the Third Amended Consent Scheduling Order, "limited written discovery" may be conducted "[t]o the extent that any records or information is identified in depositions that were requested during written discovery and

10

not previously provided.").  Additionally, the court agreed to provide Oakwood with the remedy of amending its complaint for the second time, partly because Oakwood represented that any additional discovery would be limited.  In its motion for leave to file the second amended complaint, Oakwood stated, "Allowing this one additional claim will require only limited written discovery."  ECF No. 45 at 2.

Based on those factors, the court ordered that the discovery be limited to requests about Arch-I-Tech and Tom Fouts.  ECF No. 67 at 8 ("[T]o resolve the issue, Oakwood should file a new request for production that is specifically tailored to discovery on the customer complaints filed by Arch-I-Tech and Tom Fouts Tire Co.").  Oakwood itself agrees that the June Order was limited in its scope.  See ECF No. 81 at 2 ("The Court permitted Oakwood to reissue supplemental discovery as to these two [] customers . . . .").  However, Oakwood claims that "the trajectory of the case has changed drastically," justifying additional discovery.  ECF No. 81 at 2–3.  Oakwood claims that at the time of the June Order, it had only been aware of Arch-I-Tech and Tom Fouts's existence, and it "did not know to seek discovery relating to other dissatisfied customers."  Id.  But Oakwood claims after the June Order, it discovered the existence of more dissatisfied customers via a spreadsheet created and maintained by SWK that was used to "register[] customer complaints and assign[] customers with a 'customer temperature.'"  Id. at 3.  As such, Oakwood filed a motion to compel responses to its third and fourth requests for production and served its fifth requests for production. SWK in turn argues that "Oakwood has lost sight of the permissible scope of discovery" as established under Rule 26 and the June Order.  ECF No. 77-1 at 1.  SWK argues that it is entitled to a protective order against each of Oakwood's outstanding discovery

requests: (1) the third requests for production, (2) the fourth requests for production, (3) the fifth requests for production, and (4) the subpoenas to third parties. With that background in mind, the court considers each category of discovery in turn.

### 1. Third Requests for Production

Oakwood served its third requests for production on May 25, 2022. ECF No. 74-1. On July 8, 2022, SWK served its responses to those requests, along with its responses to Oakwood's fourth requests for production. In its responses, SWK objected to all twenty-three of the requests in Oakwood's third and fourth requests for production. ECF No. 74-4. As a result, the third requests for production were served prior to the court's June Order, but no disputes were raised until after the issuance of the June Order. Although the third requests for production were served prior to the June Order, Oakwood moves for the court to compel a response on the requests for production on the grounds that the requests are relevant to the Oakwood's SCUTPA claim and therefore are consistent with the June Order. On the opposing end, SWK argues that the discovery requests were served after the deadline for discovery. Therefore, Oakwood must satisfy both the motion to compel standard and the good cause standard under Federal Rule of Civil Procedure 16(b).

The court finds that Oakwood has shown good cause to conduct additional discovery into documents and communications related to SWK's other customers, but not into other matters contemplated by the requests. Namely, the court finds that Requests

for Production Nos. 6,[1] 19,[2] 20,[3] 21,[4] and 22[5] in the third requests for production relate to companies that may reasonably support Oakwood's SCUTPA claim.  As the court explained in the June Order, South Carolina courts generally find that "new information uncovered during the course of discovery constitutes good cause sufficient to satisfy the rigors of Rule 16, when such information is relayed to the Court promptly and diligently."  Brightview Grp., LP v. Glynn, 2022 WL 743937, at *11 (D. Md. Mar. 11, 2022).

To be sure, the court's June Order limited the additional discovery to documents related to Arch-I-Tech and Tom Fouts.  But the court finds that additional discovery into the other companies is supported by good cause.  As Oakwood explains, SWK produced a spreadsheet as part of its productions related to Tom Fouts.  Although the spreadsheet was redacted, Oakwood was able to discern that SWK assigned a temperature level of "red" to at least eleven customers.  Oakwood also explained at the hearing that based on the Tom Fouts production, counsel for Oakwood began contacting other customers and found good cause to believe that those customers expressed dissatisfaction for the same or substantially similar reasons as Oakwood, Arch-I-Tech, and Tom Fouts.  For the same reasons that the court allowed discovery into Arch-I-Tech and Tom Fouts—namely, the discovery of information to support a SCUTPA claim—the court finds that the recently-

---

[1] Requesting documents related to Greytrix India Pvt. Ltd. ("Greytrix").  Greytrix is an offshore third-party contractor that worked on customization for Oakwood.  It was not a customer, but the court will allow discovery into the company because it previously allowed SWK to subpoena Greytrix after SWK withdrew its motion to quash.  ECF No. 67 at 31–32.

[2] Arch-I-Tech.

[3] Tom Fouts.

[4] Champion Thread Company.

[5] Buckeye Fire Equipment Company.

discovered information supports allowing discovery into the other companies that may have had issues with SWK's services.  Under the Rule 16(b) good cause standard, "the primary consideration is the diligence of the moving party."  <u>Montgomery v. Anne Arundel Cnty.</u>, 182 F. App'x 156, 162 (4th Cir. 2006).  Based on when the spreadsheet was disclosed, the court finds that Oakwood was reasonably diligent in raising the existence of the additional companies[6] with the court.  As such, the court grants the motion to compel and denies the motion for protective order as to Requests for Production Nos. 6, 19, 20, 21, and 22 in Oakwood's third requests for production.[7]

As for the other requests, however, the court finds that they do not meet the good cause threshold.  The remaining requests seek neither information about Arch-I-Tech and Tom Fouts nor information about other customers.  Although Oakwood argues that the remaining requests are relevant to its recently-added cause of action alleging a violation of SCUTPA, they are distinguishable in that Oakwood has not provided sufficient reason why it could not have propounded these requests earlier, prior to the discovery deadline. For example, Discovery Request No. 2 requests copies of the "generally accepted industry standards" that SWK warrants that its services will be performed under. Oakwood suggests that the information is relevant to whether SWK's actions adversely

---

[6] In Oakwood's latest brief, it does not argue that Blytheco, Inc. was one of the customers marked as a code red.  As such, the court will not grant the motion to compel as to Request for Production No. 7, which requests documents and communication related to Blytheco.

[7] In SWK's responses to Oakwood's third requests for production, SWK notes that its documents and communications related to Arch-I-Tech "are subject to a confidentiality and non-disparagement agreement."  ECF No. 74-4 at 20.  SWK did not reraise this argument in its response to the motion to compel or motion for protective order, but in any event, the court notes that the confidentiality agreement in this case adequately protects against the concerns implicated.  <u>See</u> ECF No. 12.

impacted the public, but the same information would have been relevant to its original cause of action for breach of warranty. The same can be said for the other requests, which largely seek internal documents and communications with Acumatica. Finally, as to Requests for Production Nos. 7 and 8, which request a list of customers that terminated their engagement with SWK, the court finds that those requests are not tailored to Oakwood's SCUTPA claim. As the court explained at the hearing, providing poor service is not enough, on its own, to raise a valid SCUTPA claim.

For clarity, the court denies the motion to compel and grants the motion for protective order as to Requests for Production Nos. 1–5 and 7–18 in the third requests for production.

### 2.  Fourth Requests for Production

Oakwood served its fourth requests for production on July 7, 2022. ECF No. 74-3. Again, the June Order stated that discovery should be limited to documents related to Arch-I-Tech and Tom Fouts. Thus, any requests that go beyond those two companies must satisfy Rule 16(b)'s good-cause standard.

The fourth requests for production request documents and communications pertaining to Cherry Republic, Inc. ("Cherry Republic"). ECF No. 74-3 at 6. Cherry Republic is one of the customers that Oakwood claims it discovered after the June Order. For the same reasons discussed above under the third requests for production, the court grants the motion to compel and denies the motion for protective order as to the single request in the fourth requests for production.

### 3. Fifth Requests for Production

On August 3, 2022, Oakwood served its fifth requests for production. ECF No. 77-5. In lieu of responding, SWK filed its motion for protective order. Eight of the requests in the fifth requests for production seek information on customers who Oakwood reasonably believed had similar implementation issues. These are Requests for Production Nos. 12,[8] 16,[9] 17,[10] 18,[11] 19,[12] 20,[13] 21,[14] and 22.[15] For the same reasons as discussed above, the court grants the motion to compel as to these discovery requests.

Oakwood argues that its remaining discovery requests are intended to identify additional companies that could contribute to the repetition of allegedly unlawful conduct that forms the basis of its SCUTPA claim. The court is unconvinced by this argument. In the June Order, the court allowed additional discovery so that Oakwood could pursue information based on discoveries it made in depositions, not to cast a wide net to search for information anew. Certainly, the court also explained that Oakwood could restate and reissue Request for Production No. 16 in its first requests for production, which sought documents concerning customer complaints, but none of Oakwood's discovery requests appear to be propounded for that purpose.[16] Rather, they seek information that, once

---

[8] Clarification related to Tom Fouts.

[9] Carter Millwork Inc. ("Carter Millwork")

[10] Eagle Carports, Inc. ("Eagle Carports").

[11] Visionary Technology Solutions, LLC. ("Visionary Technology")

[12] Pinehurst Medical Clinic, Inc. ("Pinehurst Medical")

[13] YMC America, Inc. ("YMC America").

[14] EX2 Technology, LLC. ("EX2 Technology").

[15] Parker Ranch, Inc. ("Parker Ranch")

[16] Furthermore, in an email disclosed to the court containing Oakwood's informal request to supplement, Oakwood indicated it would be satisfied as long as SWK supplemented its response with information about Arch-I-Tech. See ECF No. 44-5 at 2–4. Oakwood's return to searching for internal records in the fifth requests for production appears to be a departure from the original request.

again, could have been included in prior discovery requests.  It would be unwieldy to list

every single request, but for example, Request for Production No. 1 in the fifth requests

for production seeks "[c]opies of all versions of QBR Acumatica spreadsheets from

January 2015 to present in native format, including all internal communications within

SWK and external communications with Acumatica and any other third-party regarding

the same."  ECF No. 77-5 at 4.  Similarly, Request for Production No. 2 seeks "[c]opies

of all internal communications and documents exchanged within SWK and external

communications and documents exchanged with Acumatica and any other third-party

from January 2015 – present relating to 'escalation' of SWK customers."  Id.

        In an effort to convince the court that its motions to amend and compel were

justified, Oakwood represented that discovery would be limited to discovery on the

customers that it identified during depositions, and the court is willing to extend those

parameters to other customers that Oakwood may have discovered since the June Order.

For the remaining requests, however, the court finds that Oakwood would be

impermissibly expanding discovery by recasting its line in search of additional

dissatisfied fish.  As such, the court denies the motion to compel and grants the motion

for protective order as to Requests for Production No. 1–11 and 13–15 in Oakwood's

fifth requests for production.

### 4.  Subpoenas to Third Parties

        Additionally, SWK seeks a protective order that prohibits Oakwood from issuing

subpoenas to various corporate entities, including current and former customers, business

partners, and the parent company and a subsidiary of SWK.  On August 1, 2022,

Oakwood issued subpoenas to six of SWK's current and former customers: (1) Eagle

Carports, (2) Visionary Technology, (3) EX2 Technology, (4) YMC America, (5) Pinehurst Medical, and (6) Parker Ranch.  ECF No. 77-9.  Throughout early August 2022, Oakwood sent an additional five subpoenas to another customer, two business partners, SWK's parent company, and SWK's newly-acquired subsidiary: (1) Carter Millwork, (2) Tayana Holdings, LLC, (3) Kensium Solutions, LLC ("Kensium Solutions"), (4) SilverSun Technologies, Inc. ("SilverSun Technologies"), and (5) Dynamic Tech Services, Inc. ("Dynamic Tech").  ECF No. 77-2 at 43–77.

As a preliminary matter, Oakwood argues that SWK lacks standing to object or move to quash the subpoenas.  Oakwood is correct that "[o]rdinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena."  United States v. Idema, 118 F. App'x 740, 744 (4th Cir. 2005) (per curiam) (unpublished).  But as the court explained in the June Order, SWK's motion may be fairly construed as a request to enforce the amended scheduling order's deadlines for discovery, rather than a motion to quash brought on behalf of third parties.  See Anderson v. Procter & Gamble Paper Prods. Co., 2013 WL 5651802, at *1 (E.D. Wis. Oct. 15, 2013) (construing a motion to quash as a motion to enforce the scheduling order).  Therefore, the motion is properly before the court.

Next, Oakwood argues that the subpoenas are procedurally improper.  Subpoenas are governed by Federal Rule of Civil Procedure 45.  A subpoena made on a non-party must state the place where compliance is required, which must be within 100 miles of where the subpoenaed non-party resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(a)(1)(A)(iii), (c)(2)(A).  A subpoena that requires a non-

18

party's compliance outside of Rule 45's geographical scope is invalid.  See Miller v. Holzmann, 471 F. Supp. 2d 119, 121 (D.D.C. 2007).  Clearly, Rule 45 requires that when a party seeks to compel a non-party's action pursuant to a subpoena duces tecum, the party must file its motion to compel in the district where the sought documents are located, not in the district where the subpoena was issued.  Courts around the country have denied motions to compel compliance with a subpoena and motions to quash a subpoena where the subpoena required compliance in another district.  See Europlay Capital Advisors, LLC v. Does, 323 F.R.D. 628, 629 (C.D. Cal. 2018) (finding that because the subpoena required compliance in another district, the court had no jurisdiction to grant a motion to compel); Agincourt Gaming, LLC v. Zynga, Inc., 2014 WL 4079555 (D. Nev. Aug. 15, 2014) (finding that the court lacked jurisdiction to resolve a motion to quash where the subpoena required in a different district); Semex All. v. Elite Dairy Genomics, LLC, 2014 WL 1576917 (S.D. Ohio Apr. 18, 2014) (same).

Here, Oakwood's subpoenas require compliance from recipients around the country, none of which reside in the District of South Carolina.[17]  See generally ECF No. 77-2.  The court further notes that in each of the subpoenas, Oakwood requested the production of documents to Oakwood counsel's offices in Charleston, SC, violating the 100-mile rule.  See generally id.  As such, the court must deny the motion.  Because of

---

[17] Mount Airy, NC (Eagle Carports); Atlanta, GA (Visionary Technology and Dynamic Tech); Lincoln, NE (EX2 Technology); Devens, MA (YMC America); Pinehurst, NC (Pinehurst Medical); Kamuela, HI (Parker Ranch); Duluth, GA (Tayana Holdings); Lexington, NC (Carter Millwork); Chicago, IL (Kensium Solutions); Wilmington, DE (SilverSun Technologies).

the subpoenas' fatal procedural shortcomings, the court need not reach their substantive merits and grants SWK's motion for protective order.[18]

### C. SWK's Motion to Claw Back

Finally, SWK requests that the court order Oakwood to return certain inadvertently produced documents and to delete them from its servers. In responding to Oakwood's third requests for production, SWK produced several Excel spreadsheets containing information about its customers, including information responsive to Oakwood's requests regarding Arch-I-Tech and Tom Fouts. However, "the spreadsheets also contained voluminous other information about customers and projects not responsive to Oakwood's discovery requests." ECF No. 77-1 at 16. According to SWK, counsel for SWK had intended to apply "protections" to the spreadsheet with the expectation that Oakwood would not be able to access the protected information, but "due to a mistake by counsel, the protections were not properly applied," and Oakwood was able to access the information about the other customers and projects. Id. SWK argues that Oakwood used the information to "identify and harass" SWK's customers, former customers, and business partners. Id.

Under the Federal Rules of Civil Procedure, a party may seek to claw back documents when it has inadvertently disclosed materials that it later claims should have

---

[18] If the court were to reach the merits of the motion, the court would still deny the motion to compel. The subpoenas to SWK's business partners, parent company, and its subsidiary do not appear related to whether SWK's allegedly deceptive act was repeated among other customers. And although the court granted the motion to compel responses to the requests for production related to the customers, the court finds that placing the added burden on the customers to respond is not proportional to the needs of the case, based on the evidence presented. According to Diana Kyser, SWK's chief operating officer, none of the subpoena recipients received the same type of service that Oakwood received. ECF No. 77-8, Keyser Decl. ¶¶ 6, 14.

been withheld on grounds of a privilege, and it seeks to argue that the production should not constitute a waiver.  See Fed. R. Civ. P. 26(b)(5)(B) (explaining the procedure for information produced that is subject to a claim of privilege or of protection as trial-preparation material); see also Adelman v. Coastal Select Ins. Co., 2019 WL 465600, at *4 (Feb. 6, 2019) (discussing the claw-back procedure in the context of a disclosure of privileged information).  Some courts have found that claw-back provisions may allow for claw back of documents that contain confidential information, which is the basis asserted here.  See, e.g., Bell Inc. v. GE Lighting LLC, 2014 WL 1630754, at *11 (W.D. Va. Apr. 23, 2014) (noting that a proper claw-back provision may encompass trade secrets and confidential research, development, or commercial information).  But importantly, in those cases, the parties had already mutually agreed to a claw-back provision in the protective order.  See id; Nothstein v. USA Cycling, 337 F.R.D. 375, 394–95 (E.D. Pa. 2020) (finding that the magistrate judge had erred in allowing a party to claw back the name of a reporter of sexual abuse because the identity of the reporter was not subject to a privilege and the protective order did not have a general claw-back provision).  There is no claw-back provision in the confidentiality order here.

In any event, the court finds that based on the information provided by the parties, the spreadsheet was not wrongfully produced.  To be sure, information about customers may be considered confidential, but the concern with producing such documents is minimized by the confidentiality order in this case, ECF No. 12.  See Haynes v. S. Carolina Waste, LLC, 2022 WL 2037925, at *1 (D.S.C. June 2, 2022) (finding that information like customer lists was confidential but fell within the scope of the confidentiality order).  To the extent that SWK is concerned that the confidentiality order

in this case does not adequately protect the confidentiality of its customers, the court may further issue a protective order ordering Oakwood to use the information solely for purposes of litigation.  See U.S. ex rel. Rector v. Bon Secours Richmond Health Corp., 2014 WL 66714, at *4 (E.D. Va. Jan. 6, 2014) (citing Cabotage v. Ohio Hosp. for Psychiatry, LLC, 2012 WL 3064116, at *3 (S.D. Ohio July 27, 2012)) (explaining that courts retain the inherent authority to enter protective orders to control and preserve the integrity of their judicial proceedings); cf. In re Wilson, 2017 WL 2536913, at *2–3 (D.S.C. June 12, 2017) (explaining that the court's prior decision to issue a protective order ordering a party in the case not to use or disseminate confidential information after the information was procedurally required to be unsealed).

To be clear, the court does not find that Oakwood's actions, to date, violate the confidentiality order.  To the extent that SWK argues that Oakwood violated the confidentiality order by issuing subpoenas to the customers, the court notes that it has quashed the subpoenas.  The parties may further consider this order to include a protective order prohibiting Oakwood from using the information or disseminating it to any third party beyond the extent of this litigation.  In all other respects, the court denies the motion to claw back.

### III.   CONCLUSION

For the reasons set forth above, the court (1) **CLARIFIES** the June Order pursuant to this order, (2) **GRANTS IN PART** and **DENIES IN PART** the motion to compel, and (3) **GRANTS IN PART** and **DENIES IN PART** the motion for protective order and to claw back inadvertently produced documents in accordance with this order.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 12, 2022**
**Charleston, South Carolina**