**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | | |
|---|---|---|
| OAKWOOD PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 9:20-cv-04107-DCN |
| | ) | |
| SWK TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| OAKWOOD PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 9:22-cv-01538-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| ACUMATICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The following matter is before the court on defendant SWK Technologies, Inc.'s ("SWK") motion to reconsider, ECF No. 87, and plaintiff Oakwood Products, Inc.'s ("Oakwood") motion to alter or amend, ECF No. 88. For the reasons set forth below, the court denies SWK's motion to reconsider and clarifies its order based on Oakwood's motion to alter or amend.

**I.  BACKGROUND**

This action arises out of a breach of contract dispute between Oakwood and SWK. SWK is an information technology consulting company that provides enterprise resource planning and accounting software products and consulting services, among other services. It assists with the implementation of third-party software products, including

1

Sage 500 and Acumatica ERP, which are business management software programs that assist companies with their accounting, supply chain, and other needs. Defendant Acumatica, Inc. ("Acumatica") is the developer of Acumatica ERP. Acumatica has no sales force of its own, so it partners with companies like SWK and expressly licenses and permits them to market, license, sell, and implement its software products, including Acumatica ERP. Oakwood Prods. v. Acumatica, Inc., 9:22-cv-01538-DCN (May 13, 2022) (ECF No. 1 ¶¶ 18–19).

Oakwood is a South Carolina corporation that operates a fine organics manufacturing facility in North Estill, South Carolina. On or around January 21, 2019, SWK and Oakwood entered into a Statement of Work ("SOW") in which SWK agreed to transition Oakwood's business management software from Sage 500 to Acumatica ERP. The SOW was accompanied by a Master Services Agreement (the "Agreement"), which was signed by both parties on or around January 28, 2019.

According to Oakwood, during the engagement, SWK failed to identify and address several issues with the Acumatica ERP implementation in a suitable manner. These alleged deficiencies included issues with the program speed and with its shipping and pricing features, which were crucial to Oakwood's business. Oakwood also claims that SWK's project managers lacked certain technical proficiencies, causing a delay in the transition from Sage 500 to Acumatica. Fourteen months after the project start date, SWK had yet to complete the transition. As a result, Oakwood hired a third-party vendor, TechRiver, LLC ("TechRiver"), to analyze the incomplete configuration of Acumatica ERP. Based on TechRiver's recommendation, Oakwood ultimately decided

2

to upgrade its Sage 500 software using TechRiver rather than complete the deployment of Acumatica ERP with SWK.

On October 27, 2020, Oakwood filed a complaint in the Hampton County Court of Common Pleas against SWK. ECF No. 1-1, Compl. On November 25, 2020, SWK filed its notice of removal to this court. ECF No. 1. On September 22, 2021, Oakwood filed an amended complaint against SWK. ECF No. 35, Amend. Compl. On July 6, Oakwood, with leave of the court, filed its second amended complaint. ECF No. 69, 2d Amend. Compl. Oakwood's current outstanding causes of action against SWK are for: (1) rescission of contract, (2) breach of contract, (3) fraudulent nondisclosure, (4) breach of warranty, and (5) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10, et seq. Id. On May 13, 2022, Oakwood filed a complaint against Acumatica, asserting that Acumatica had failed to exercise appropriate control and failed to prevent SWK from marketing, licensing, selling, and implementing Acumatica's product in situations where it was unfeasible for use. Oakwood Prods., Inc. v. Acumatica, Inc., No. 22-cv-01538-DCN (D.S.C. May 13, 2022) (ECF No. 1 ¶ 3). On July 21, 2022, the parties agreed to consolidate the two cases against SWK and Acumatica into one case for purposes of discovery and trial. ECF No. 72.

On October 12, 2022, the court entered an order on three motions filed by the parties. ECF No. 86. As relevant to the instant motion, the court clarified its prior order on summary judgment, ECF No. 67, explaining that the issue of whether SWK owed Oakwood a duty to disclose was a matter of law. ECF No. 86 at 6–9. Additionally, the court denied SWK's request to claw back certain inadvertently-produced documents. Id. at 20–22. On October 12, 2022, SWK filed a motion to reconsider. ECF No. 87.

Oakwood responded in opposition on December 5, 2022, ECF No. 93, and SWK replied on December 12, 2022, ECF No. 96. On November 9, 2022, Oakwood filed a motion to alter or amend. ECF No. 88. SWK responded in opposition on November 28, 2022, ECF No. 89, and Oakwood replied on December 5, 2022, ECF No. 92. As such, both motions have been fully briefed and are now ripe for review.

## II.  STANDARD

Federal Rule of Civil Procedure 54(b) is the proper avenue by which a party may seek reconsideration of an interlocutory order. Spill the Beans, Inc. v. Sweetreats, Inc., 2009 WL 2929434, at *1 (D.S.C. Sept. 8, 2009). Rule 54(b) provides that

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b) (emphasis added). Under Rule 54(b), the "district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003) (citations omitted); see Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"). Compared to motions under Rule 59(e) for reconsideration of final judgments, "Rule 54(b)'s approach involves broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light." Carlson v. Bos. Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (citation omitted).

"The Fourth Circuit has offered little guidance on the standard for evaluating a Rule 54(b) motion" but has noted that Rule 54(b) motions "are 'not subject to the strict

4

standards applicable to motions for reconsideration of a final judgment.'" Ashmore v. Williams, 2017 WL 24255 at *2 (D.S.C. Jan. 3, 2017) (quoting Am. Canoe Ass'n, 326 F.3d at 514).  Even so, "district courts in the Fourth Circuit . . . look to the standards of motions under Rule 59 for guidance."[1]  Id. (citations omitted).  As such, Rule 54(b) reconsideration is appropriate "(1) to follow an intervening change in controlling law; (2) on account of new evidence; or (3) to correct a clear error of law or prevent manifest injustice."  Id. (citation omitted); Carlson, 856 F.3d at 324.

### III.  DISCUSSION

**A.  SWK's Motion to Reconsider**

SWK's motion for reconsideration marks the second time that this court is being asked to evaluate one of its findings in its order on SWK's motion for partial summary judgment.  As the court did in its prior order, ECF No. 86 (the "October Order"), the court first recounts the procedural history leading up to this point.

In its motion for partial summary judgment, SWK moved for summary judgment on Oakwood's cause of action for fraud and negligent misrepresentation.  ECF No. 24 at 4–7. On June 10, 2022, the court granted in part and denied in part SWK's motion for partial summary judgment, ECF No. 67 (the "June Order").  Notably, the court determined that there was no genuine dispute of material fact that SWK did not make a fraudulent or negligent representation because each of SWK's affirmative representations at issue were mere expressions of opinion or promises of a future event.  See ECF No. 67

---

[1] SWK brings its motion for reconsideration under Federal Rule of Civil Procedure 59(e).  See ECF No. 87-1 at 3–4.  Since Rule 59(e) and Rule 54(b) are based on the same standards, the court can evaluate Oakwood's arguments without requesting that the parties re-brief the issue.

at 18. However, the court further determined that there was a genuine dispute of material fact as to whether SWK made a material nondisclosure by concealing and failing to disclose certain facts when it had a duty to do so. Id. at 21. In reaching this finding, the court noted that under South Carolina law, a duty to disclose generally arises under three circumstances. Id. (citing Doe 2 v. Associated Press, 331 F.3d 417, 420 (4th Cir. 2003)).

Under one of the three circumstances, a duty to disclose arises where "the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure." Jacobson v. Yaschik, 155 S.E.2d 601, 605 (S.C. 1967). Drawing upon that language, the court stated in the June Order: "Viewed in the light most favorable to Oakwood, the nature of the contract between Oakwood and SWK was intrinsically fiduciary." ECF No. 67 at 21. The court then determined that a genuine dispute of material fact existed as to whether SWK breached that duty, denied the motion for summary judgment, and allowed a claim for fraudulent nondisclosure to proceed. Id.

On June 24, 2022, SWK filed a motion requesting clarification on the meaning of the sentence discussing the fiduciary nature of the contract. ECF No. 68. Specifically, SWK requested that the court clarify whether it meant that the contract was intrinsically fiduciary (1) as a matter of law, meaning it was established as the law of the case; or (2) only when viewed in the light most favorable to Oakwood, meaning the issue was still subject to proof before the jury. Acknowledging that the sentence left some ambiguity, the court clarified in the October Order that it had found, as a matter of law, that SWK owed Oakwood a duty to disclose based on the fiduciary nature of the contract.

Now, SWK objects to the court's clarification, arguing that its decision results in manifest injustice. SWK argues that the court should not have decided the issue of whether a fiduciary relationship existed between Oakwood and SWK in either its June Order or its order on reconsideration. SWK presents two broad arguments. First, it argues that under South Carolina law, whether a fiduciary relationship exists is a determination for the jury to make. Second, SWK argues that the issue of whether a fiduciary relationship existed was not before the court in the first place. The court addresses each argument in turn.

### 1. South Carolina Law

At the outset of its discussion in the October Order, the court acknowledged that it had not identified any cases analyzing whether the existence of a duty to disclose is a matter of law for the court to decide. See ECF No. 86 at 8 ("South Carolina courts have not specified whether the existence of a duty to disclose is purely the province of the courts . . . ."). In the absence of any direct authority on the duty to disclose, the court analogized it to duties in negligence cases and to fiduciary duties. In South Carolina, "[t]he existence of a fiduciary duty is a question of law for the court." Turpin v. Lowther, 745 S.E.2d 397, 401 (S.C. Ct. App. 2013) (citing Vortex Sports & Ent., Inc. v. Ware, 662 S.E.2d 444, 450 (S.C. Ct. App. 2008)). Accordingly, when the court determined in the June Order that the Agreement in this case gave rise to a duty to disclose, that finding was established as a matter of law.

In the instant motion, SWK claims not to dispute "that the determination of duties that arise in the context of a fiduciary relationship is a question of law for the Court." ECF No. 87-1. However, SWK argues that "whether a relationship is fiduciary in nature

7

is dependent upon the facts and circumstances of a given case and is not a question of law." Id. As such, SWK avers that the court's October Order went beyond finding that a duty to disclose existed, and the court improperly determined that the parties had a fiduciary relationship.

Certainly, the court could resolve this motion by analyzing whether there is a distinction between the existence of a "fiduciary duty"—which SWK acknowledges is a matter of law—and the existence of a "fiduciary relationship." The court need not engage in that exercise, however, because SWK reads more into the court's order than what was intended. The court did not (and does not) find that SWK and Oakwood had a fiduciary relationship. Again, South Carolina law establishes that

> a duty to disclose can arise in only three cases: (1) where there exists a "preexisting definite fiduciary relation between the parties"; (2) where one party either expressly or (by virtue of the specific circumstances of the case) implicitly "reposes a trust and confidence in the other with reference to the particular transaction in question"; or (3) where "the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure."

Doe 2, 331 F.3d at 420 (quoting Jacobson, 155 S.E.2d at 605).

If the court had wanted to find that there was a preexisting definite fiduciary relationship between the parties, it would have relied on the first category. But the court did not, and instead, it turned to the third category to decide whether there was a duty to disclose. A duty to disclose may exist even in the absence of a fiduciary relationship. Fisher v. Pelstring, 817 F. Supp. 2d 791, 823 (D.S.C. 2011) (citation omitted) ("A fiduciary relationship is not always required for a duty to disclose to exist."). It follows that the third category under Jacobson does not require a fiduciary relationship; it merely tests whether a contract or transaction had hallmarks of a fiduciary relationship. See Consol. Insured Benefits, Inc. v. Conseco Med. Ins. Co., 2006 WL 3423891, at *10

(D.S.C. Nov. 27, 2006) (citing F. Patrick Hubbard & Robert L. Felix, The South Carolina Law of Torts 72 (3d ed. 2004)) ("A duty of disclosure and due care can exist in economic transactions where no fiduciary relationship exists."); Harrell v. BMW of N. Am., LLC, 517 F. Supp. 3d 527, 539–40 (D.S.C. 2021) (explaining that while the relationship between the plaintiff and defendant was "not a fiduciary one," a duty to speak may arise from one of the other three scenarios, but dismissing the complaint for failure to allege facts reflecting the other two scenarios).

In deciding that the contract or transaction was intrinsically fiduciary, the court emphasizes that it did not weigh in on whether the parties had a fiduciary relationship as a general matter. As the courts above and others have explained, those are separate considerations. See Consol. Insured, 2006 WL 3423891, at *10 (recognizing a duty to disclose even in the absence of a fiduciary relationship); Memari v. Ply Gem Prime Holdings, Inc., 2013 WL 12320410, at *5 (D.S.C. Aug. 6, 2013) (discussing fraudulent concealment in the context of a commercial transaction). The court referenced the law on fiduciary relationships because it had been confronted with deciding whether the duty to disclose should be decided a matter of law. The court reasoned that since the existence of a fiduciary duty is a matter of law, the existence of a duty to disclose should be a matter of law by analogy.

The remainder of SWK's arguments in this section focus on cases holding that the existence of a fiduciary relationship is based on the "particulars" of the relationship. ECF No. 87-1 at 6 (citing In re Infinity Bus. Grp., Inc., 628 B.R. 213, 244 (Bankr. S.C. 2021), aff'd, 31 F.4th 294 (4th Cir. 2022)). SWK argues that the court erred in holding that a contract for the implementation of software gave rise to a fiduciary relationship because

9

that should be a fact-specific inquiry. Again, the court did not weigh facts or reach a conclusion on whether a fiduciary relationship existed as a matter of law. Instead, the court found that SWK had a duty to disclose information regarding the future of the Acumatica implementation. The court does not find that the holding constitutes a clear error of law, and it formally denies SWK's motion with the hope that the explanation in this order may be a salve for the wound.

### 2. Issues Before the Court

Next, SWK argues that the issue of whether SWK and Oakwood had a fiduciary relationship was never before the court. For the reasons specified above, the court concurs. Of course, based on its arguments, SWK also appears to be arguing that the court never should have considered or ruled upon the claim of fraudulent nondisclosure. The court examines that contention in detail below.

First, SWK argues that Oakwood never alleged facts supporting the existence of a fiduciary relationship. Again, a duty of disclosure can exist even "where no fiduciary relationship exists." Consol. Insured, 2006 WL 3423891, at *10. SWK also argues that Oakwood never pleaded a cause of action for fraudulent nondisclosure. On this point, SWK is correct. However, the court finds that claims for fraudulent nondisclosure and fraudulent misrepresentation are so interrelated that SWK should have been on notice of a fraudulent concealment/nondisclosure claim.[2] Courts have previously considered

---

[2] Additionally, SWK's argument on this ground is untimely. Oakwood claimed in its response to SWK's motion for partial summary judgment that even if SWK did not make any false representations, it fraudulently concealed and failed to disclose material facts. See, e.g., ECF No. 57 at 8 (claiming that SWK decided to conceal the fact that its sales order pick list was not compatible with Acumatica). Neither SWK's reply to that motion or its last motion to alter or amend mentioned that Oakwood failed to allege fraudulent concealment. See generally ECF Nos. 60, 68. "A Rule 54(b) motion may not

fraudulent concealment as part of a claim for fraudulent misrepresentation.  See Doe 2, 331 F.3d at 421 (analyzing the plaintiff's claim that the defendant had suppressed a material fact under the plaintiff's claim "for the tort of fraudulent misrepresentation"). Moreover, as SWK acknowledges, the amended complaint alleges that "SWK had ample opportunity to disclose that it did not have sufficient knowledge to create the customized and configured Acumatica system for Oakwood."  Amend. Compl. ¶ 74.  The amended complaint also contains factual allegations that buttress a fraudulent nondisclosure claim. These include allegations that SWK failed to provide project management plans, timelines, and other documents in violation of the SOW.  Id. ¶ 32.

SWK also briefly mentions that Oakwood failed to plead a fraudulent nondisclosure claim with particularity, which is a requirement for fraud claims under Federal Rule of Civil Procedure 9(b).  See ECF No. 87-1 at 10.  Of note, "[m]any courts, including this District, have recognized the difficulty in applying Rule 9(b)'s particularity requirement to fraudulent concealment claims," which, by their very nature, will not refer to specific statements.  Harrell, 517 F. Supp. 3d at 538–39 (citing Naparala v. Pella Corp., 106 F. Supp. 3d 715, 725 (D.S.C. 2015)).  But at least one court has stated that a complaint comports with the Rule 9(b) standard "if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."  Id. (quoting Naparala, 106 F. Supp. 3d at 725).  The court finds that both

---

be used to relitigate the merits of the issues previously decided by the court."  Koon ex rel. Glay v. Prince George's Cnty, 2019 WL 2642834, at *2 (D. Md. July 27, 2019) (cleaned up).  Thus, SWK's argument that the court erred in construing Oakwood's claim is insufficient for this reason alone.

prongs are satisfied such that SWK is not unfairly prejudiced by having to defend against a fraudulent concealment claim.

Second, SWK argues that the court was never presented with a motion that would require it to affirmatively find that a fiduciary relationship existed. Even assuming SWK means that the court was never presented with a motion to decide whether a duty to disclose exists, the court finds that it did not improperly decide the issue. In Consolidated Insured Benefits, Inc. v. Conseco Medical Insurance Co., for example, the defendant filed a motion for summary judgment seeking summary judgment on the plaintiff's fraud by nondisclosure claim. 2006 WL 3423891, at *1. The court reached the same disposition as this court did in the June Order: it found "that there [we]re genuine issues of material fact" and denied the defendant's motion as to the plaintiff's claim for fraud by nondisclosure. Id. at *10. Notably, although it denied the motion, the court in Consolidated Insured determined that the defendant "had a duty to disclose information regarding the future of the marketing partnership." Id. Like here, the plaintiff had not moved for summary judgment on the issue. But because the issue was properly before it, the court ultimately determined that a duty to disclose existed before ultimately denying summary judgment. The court has adopted a near-identical approach here, and Consolidated Insurance cements that the court's decision did not result in a clear error of law or manifest injustice.

Finally, SWK argues that the court erred in deciding the existence of a fiduciary relationship because SWK was unable to brief the issue. Again, the court favorably construes SWK's argument to be that it was unable to brief the issue of whether a duty to disclose arose based on the contract or transaction. Such an argument nevertheless fails.

12

Since the third "method" under Jacobson for establishing a duty to disclose relies upon "the very contract or transaction itself," Jacobson, 155 S.E.2d at 605, the court was equipped to analyze whether the SOW and Agreement gave rise to such a duty. The parties had provided the court with both contracts to review at the summary judgment stage. No additional briefing would have altered the court's analysis. To the extent that SWK is arguing against the outcome of the October Order—which found that a duty to disclose arose out of the SOW, Agreement, and transaction—the court explicitly holds that the October Order involved an application of law that does not reflect a clear error or manifest injustice.[3] Ultimately, the court denies SWK's motion to reconsider its finding on the duty to disclose and reserves the remaining issues, including whether there was a breach of the duty,[4] for trial.

### B. Oakwood's Motion to Alter/Amend

In its own motion to alter or amend, Oakwood asks the court to clarify whether SWK should be required to produce files related to its customer complaints without redactions.

---

[3] See, e.g., Wright v. Craft, 640 S.E.2d 486, 499–500 (S.C. Ct. App. 2006) (determining that a duty to disclose was implicated in a transaction where the purchasers relied upon the seller's trustworthiness); Aiken Cnty. v. BSP Div. of Envirotech Corp., 866 F.2d 661, 675–76 (4th Cir. 1989) ("Where a party to a transaction conceals some material fact within his own knowledge, which it is his duty to disclose, he is guilty of actual fraud.").

[4] This includes deciding whether there were material facts that could not have been discovered by the plaintiff, despite its diligence. Memari, 2013 WL 12320410, at *5 (quoting Lawson v. Citizens & S. Nat'l Bank of S.C., 193 S.E.2d 124, 128 (S.C. 1972)) (explaining, in the context of commercial transactions, that "where material facts are accessible to the vendor only, and he knows them not to be within the reach of the diligent attention, observation and judgment of the purchaser, the vendor is bound to disclose such facts and make them known to the purchaser").

By way of background, SWK previously produced several Excel spreadsheets containing information about its customers in response to Oakwood's third request for production. The files were produced as part of the production related to Tom Fouts Tire (the "Tom Fouts Project File"), although it appears that the files reflect information about SWK's customers beyond Tom Fouts. On August 12, 2022, SWK filed a motion to claw back the documents, claiming they were inadvertently produced. In the October Order, the court denied SWK's motion to claw back the documents, reasoning that the confidentiality order in this case adequately protects against any risk that information about SWK's customers might be used in a way that would violate the confidentiality of the customers. ECF No. 86 at 21–22. Oakwood claims that following the October Order, it approached counsel for SWK and requested that the Tom Fouts Project File be produced without redactions. SWK refused, and Oakwood filed the instant motion.

As a general matter, the issue before the court is largely the same one that was before the court on the last motion. SWK does not claim that it is withholding any information based on attorney-client privilege—it solely argues that the customer information is irrelevant, confidential, and should be withheld (via redactions) to avoid discovery abuses by Oakwood. To avoid any future misunderstandings, the court will attempt to be as explicit as possible below.

SWK argues that a court may permit a party to redact irrelevant information. ECF No. 89 at 6–9 (collecting cases). While certainly true, the court explained in the October Order that information about SWK's customers was generally relevant to Oakwood's SCUTPA claim. See ECF No. 86 at 13–14 (explaining that to support Oakwood's SCUTPA claim, the court would allow "discovery into [] other companies

14

that may have had issues with SWK's services"). The cases cited by SWK fail to move the needle. As this court and others have explained, redactions made for the sole purpose of excluding irrelevant information are generally disfavored. E.g., In re MI Windows & Doors, Inc. Prods. Liab. Litig., 2013 WL 268206, at *2 (D.S.C. Jan. 23, 2013).

At the same time, the court's order was not intended to provide Oakwood with carte blanche authority to use the customer information obtained in the file. The court emphasized that it intended to uphold the confidentiality agreement and protect SWK's interest in the confidentiality of its customers. As such, the court prohibited Oakwood from subpoenaing any customers that it might discover from the documents—a decision that was also rendered based on Oakwood's failure to comply with federal subpoena rules. See ECF No. 86 at 22 ("To the extent that SWK argues that Oakwood violated the confidentiality order by issuing subpoenas to the customers, the court notes that it has quashed the subpoenas [in the previous section explaining that the subpoenas failed to comply with Rule 45]."); see also id. at 17 (explaining that although the court was allowing Oakwood to propound discovery into other allegedly-harmed customers that it had discovered during depositions, the court was not permitting Oakwood to "recast[] its line" in search of new customers). The court further issued a protective order prohibiting Oakwood from using the information or disseminating it to any third party beyond this litigation. Id. at 22. The court clarifies that SWK must produce the documents in unredacted form, but Oakwood will be prohibited from contacting those customers without leave of the court.

The court finds that such a directive should satisfy SWK's concern that Oakwood might use the customer information to "harass" SWK's customers and "interfere" with

15

SWK's ongoing business relationships. ECF No. 89 at 5. But this is ostensibly not SWK's preferred outcome, as it argues that several courts have permitted parties to redact unresponsive or confidential portions of relevant documents. Notably, SWK highlights a recent opinion from this district, explaining that "Judge Gergel . . . addressed a similar issue" in A+ Auto Service, LLC v. Republic Services of South Carolina, LLC, 2022 WL 2903314 (D.S.C. July 14, 2022). But as SWK necessarily acknowledges, that case resulted in the same outcome as the one that the court orders here. In A+ Auto Service, the court required the defendant to produce unredacted versions of the documents at issue, which contained customer information. Id. at *2. The court recognized that there were concerns that the plaintiff might be able to use the information to identify new clients for itself and that such concerns could not "easily be prevented" by the confidentiality order. Id. To resolve those concerns, the court further "prohibited [p]laintiff's counsel from using information obtained in discovery to contact any of [d]efendant's customers without leave of Court." Id.

      SWK cites A+ Auto Service to distinguish it, explaining that unlike in that case, SWK has redacted a relatively minimal number of pages out of the total number in the Tom Fouts Project File production. Nevertheless, the court finds that the reasoning applied by the court in A+ Auto Services applies with equal force here. Counsel for SWK should produce the documents without redactions, but counsel for Oakwood will be prohibited from contacting SWK's customers and vendors without further leave of the court.

## IV.  CONCLUSION

For the reasons set forth above, the court **DENIES** SWK's motion to reconsider and **CLARIFIES** its prior claw-back order in accordance with this order.

**AND IT IS SO ORDERED.**

                                                                           **DAVID C. NORTON**
                                                                           **UNITED STATES DISTRICT JUDGE**

**February 2, 2023**
**Charleston, South Carolina**