**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | | |
|---|---|---|
| OAKWOOD PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 9:20-cv-04107-DCN |
| | ) | |
| SWK TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| OAKWOOD PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 9:22-cv-01538-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| ACUMATICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The following matter is before the court on plaintiff Oakwood Products, Inc.'s ("Oakwood") motion to compel, ECF No. 99. For the reasons set forth below, the court denies the motion in part and hold the motion in abeyance in part, as set forth below.

## I.  BACKGROUND

This action arises out of a breach of contract dispute between Oakwood and defendant SWK Technologies, Inc. ("SWK"). SWK is an information technology consulting company that provides enterprise resource planning and accounting software products and related services. It assists with the implementation of third-party software products, including Sage 500 and Acumatica ERP, which are business management software programs that assist companies with their accounting, supply chain, and other

1

needs. Defendant Acumatica, Inc. ("Acumatica") is the developer of Acumatica ERP. Acumatica has no sales force of its own, so it partners with companies like SWK and expressly licenses and permits them to market, license, sell, and implement its software products, including Acumatica ERP. Oakwood Prods. v. Acumatica, Inc., 9:22-cv-01538-DCN (May 13, 2022) (ECF No. 1 ¶¶ 18–19).

Oakwood is a South Carolina corporation that operates a fine organics manufacturing facility in North Estill, South Carolina. On or around January 21, 2019, SWK and Oakwood entered into a Statement of Work ("SOW") in which SWK agreed to transition Oakwood's business management software from Sage 500 to Acumatica ERP. The SOW was accompanied by a Master Services Agreement (the "Agreement"), which was signed by both parties on or around January 28, 2019.

According to Oakwood, during the engagement, SWK failed to identify and address several issues with the Acumatica ERP implementation in a suitable manner. These alleged deficiencies included issues with the program speed and with its shipping and pricing features, which were crucial to Oakwood's business. Oakwood also claims that SWK's project managers lacked certain technical proficiencies, causing a delay in the transition from Sage 500 to Acumatica. Fourteen months after the project start date, SWK had yet to complete the transition. As a result, Oakwood hired a third-party vendor, TechRiver, LLC ("TechRiver"), to analyze the incomplete configuration of Acumatica ERP. Based on TechRiver's recommendation, Oakwood ultimately decided to upgrade its Sage 500 software using TechRiver rather than complete the implementation of Acumatica ERP with SWK.

On October 27, 2020, Oakwood filed a complaint in the Hampton County Court of Common Pleas against SWK. ECF No. 1-1, Compl. On November 25, 2020, SWK removed the action to this court. ECF No. 1. On September 22, 2021, Oakwood filed an amended complaint against SWK. ECF No. 35, Amend. Compl. On July 6, Oakwood, with leave of the court, filed its second amended complaint. ECF No. 69, 2d Amend. Compl. Oakwood's current outstanding causes of action against SWK are for: (1) rescission of contract, (2) breach of contract, (3) fraudulent nondisclosure, (4) breach of warranty, and (5) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10, et seq. Id. On May 13, 2022, Oakwood filed a complaint against Acumatica, asserting that Acumatica failed to exercise appropriate control and failed to prevent SWK from marketing, licensing, selling, and implementing Acumatica's product in situations where it was unfeasible for use. Oakwood Prods., Inc. v. Acumatica, Inc., No. 22-cv-01538-DCN (D.S.C. May 13, 2022) (ECF No. 1 ¶ 3). On July 21, 2022, the parties agreed to consolidate the two cases against SWK and Acumatica into one case for purposes of discovery and trial. ECF No. 72.

On March 3, 2023, Oakwood filed a motion to compel. ECF No. 99. SWK responded in opposition on March 17, 2023, ECF No. 104, and Oakwood replied on March 24, 2023, ECF No. 105.[1] The court held a hearing on the motion on April 12, 2023. ECF No. 109. As such, the motion has been fully briefed and is now ripe for review.

---

[1] SWK filed a motion for leave to file a sur-reply, ECF No. 107, to which Oakwood responded, ECF No. 108, but the parties agreed to withdraw the filings at the hearing.

## II.  STANDARD

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order,

> [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id.  Rather, information is relevant and discoverable if it relates to "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  "The scope and conduct of discovery are within the sound discretion of the district court." Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Rsch., Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)); see also U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

If a party declines to comply with a discovery request, the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B).  An evasive or incomplete disclosure, answer, or response "must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).  District courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion." Ardrey v. United Parcel Serv.,

798 F.2d 679, 683 (4th Cir. 1986); In re MI Windows & Doors, Inc. Prod. Liab. Litig., 2013 WL 268206, at *1 (D.S.C. Jan. 24, 2013).

### III.   DISCUSSION

Oakwood claims that this is the third time that the court must weigh in on the same discovery dispute between the parties.  ECF No. 99 at 1; ECF No. 105 at 1.  Oakwood is correct that this is at least the third time the court is weighing in on a discovery dispute in this case, but the court disagrees that this is Oakwood's third request for the exact same information because of SWK's obstinance.

By way of background, Oakwood filed a motion to compel on March 11, 2022, seeking to compel responses to its first requests for production.  ECF No. 44.  On June 10, 2022, the court entered an order holding that despite the expiration of the written discovery period under the Third Amended Consent Scheduling Order, Oakwood had shown good cause to amend the complaint to add a SCUTPA claim and propound additional limited discovery, both based on information that it learned for the first time during a deposition.  ECF No. 67 at 6–12.  As a practical matter, the court held the motion to compel in abeyance so that Oakwood could file an amended complaint alleging its SCUTPA claim and refine its discovery requests.  But the court granted Oakwood's discovery request in principle to allow discovery into SWK's alleged repetition of misconduct to support the SCUTPA claim.  Specifically, based on Oakwood's representation that such discovery would be "limited," ECF No. 45 at 2, the court stated that Oakwood would be allowed to propound discovery requests pertaining to services SWK provided for two of its customers, Arch-I-Tech Doors, Inc. ("Arch-I-Tech") and Tom Fouts Tire Co. ("Tom Fouts"), ECF No. 67 at 8.

The court's order appeared to keep the parties at bay, at least for a few months. Eventually though, the levee broke, and on July 29, 2022, Oakwood filed another motion to compel, this time requesting that the court compel responses to Oakwood's third, fourth, and fifth requests for production. ECF No. 74. SWK countered by filing a motion for protective order. ECF No. 77. In essence, Oakwood claimed that written production about Arch-I-Tech and Tom Fouts was no longer enough. As part of SWK's production related to its project for Tom Fouts, SWK produced a Quarterly Business Review ("QBR") spreadsheet that contained information about a substantial number of SWK's customers. Oakwood asserted that the spreadsheet revealed the existence of additional customers who had encountered implementation problems with SWK, as indicated by the fact that SWK had designated them with a "red" temperature level. Accordingly, Oakwood sought to compel written discovery about those customers and to subpoena them. SWK responded that the spreadsheet was confidential, was never supposed to be produced, and should be clawed back. On October 12, 2022, the court granted in part and denied in part both motions (the "October Order"). ECF No. 86. On the one hand, Oakwood would not be allowed to subpoena any of the customers. Id. at 17–19, 20 n.20. On the other hand, the court found that Oakwood had met the relatively low bar for establishing good cause, and it ordered written discovery into the ten new customers Oakwood had identified. Id. at 13–14. The court denied the motion to compel in all other respects.

On November 9, 2022, SWK filed a motion for reconsideration, which, as relevant here, sought clarification on whether SWK should produce the QBR spreadsheet without redactions. ECF No. 87. On February 2, 2023, the court entered an order

clarifying that SWK must produce the spreadsheet without redactions because the confidentiality agreement in this case—along with the court's order barring subpoenas to SWK's customers—adequately protected the confidentiality of the customers.

All of that brings us to the latest discovery dispute. SWK asserts that it complied with the court's October Order by producing over 125,000 pages of documents for the ten newly-identified customers. ECF No. 104 at 6. Altogether, SWK states it has incurred over $400,000 in production-related expenses. Id. In the instant motion to compel—Oakwood's third such motion—Oakwood seeks to compel responses to Requests for Production Nos. 1, 2, 4, 8, 9, 10, 11, 12, 13 and 14 in its sixth requests for production. Those requests largely seek discovery related to another slew of SWK customers. Oakwood claims to have discovered that SWK labeled another seven companies as "CODE RED" on the same QBR spreadsheet. Those customers, who all allegedly requested different resellers or implementation partners, are: (1) CCS Presentation Systems, Inc. ("CCS"); (2) Champlain Valley Dispensary, Inc.; (3) Full Throttle Speed, Inc.; (4) General Cannabis Corporation; (5) PWR Storage Solutions, LLC; (6) Pine View Buildings, LLC ("Pine View"); and (7) Transtate Equipment Company, Inc./Avante Health Solutions ("Transtate/Avante"). ECF No. 99 at 2; ECF No. 105 at 4 n.7.

Citing the October Order, Oakwood claims that the court should permit these requests because they seek discovery relevant to Oakwood's SCUTPA claim. But Oakwood ignores other relevant directives from the court's prior orders. The court's October Order permitted SWK to seek discovery related to the ten specific customers it identified in the third and fourth requests for production. ECF No. 86 at 12–15. As the court stated and later reiterated, Oakwood was not to "recast[] its line" in search of

7

additional customers.  Id. at 17; ECF No. 98 at 15.  Yet that is exactly what Oakwood has now done, requesting discovery as to another seven SWK customers.  Absent an additional showing of good cause, the court is inclined to disallow the requests, and the court reviews Oakwood's requests for good cause below.

As a preliminary matter, the court denies Requests Nos. 1, 2 and 4 in the Sixth Requests for Production as overbroad and divergent from the court's October Order.[2]  Those requests seek documents and communications related to SWK's customers without specifying a company and therefore go beyond the scope of the court's October Order.

Next, the court considers the requests for the additional seven customers identified by Oakwood.  Oakwood claims it only discovered that these customers had been assigned a "CODE RED" after SWK produced the fully-unredacted QBR spreadsheet.  ECF No. 105 at 6.  SWK disputes this, arguing that "[a]ll seven of the customers were identified in the QBR spreadsheet produced in July 2022 that contained the ten prior customers at issue."  ECF No. 104 at 12.  This appears to be a technical matter that could easily be resolved by comparing the redacted and unredacted spreadsheets, but neither side attached the spreadsheets for comparison or requested to file them under seal.

In the absence of documentary proof, the court must assume that the seven new companies were revealed based on recent redaction removals.  Nevertheless, the court

---

[2] Request No. 1 seeks documents and communications "related to any customer of SWK switching to a different Acumatica reseller," including but not limited to documents for five specifically-identified customers.  ECF No. 99-1 at 3 (emphasis in original).  Request No. 2 seeks "[a]ll communications received by SWK from Acumatica, Inc. . . . related to any and all customers changing or switching from SWK to a different Acumatica reseller."  Id. at 4–5.  Request No. 4 seeks documents and communications related to SWK's customer satisfaction scores.  Id. at 5.

does not automatically find that good cause exists to issue discovery on these seven customers. Instead, the court finds it prudent to call a "timeout" to see if its original missive for the parties to conduct discovery on potentially deceptive trade practices remains appropriate. If the court allows Oakwood to send yet another series of requests about the seven new customers, one could imagine that Oakwood would be incentivized to endlessly find "new" records or communications about customers facing software implementation issues. As the court stated at the hearing, this would be the antithesis of the court's prior orders. Difficult as it may be to recall now, this dispute started as a motion to <u>reopen</u> discovery for Oakwood to supplement its SCUTPA claim, and Oakwood promised "<u>only limited written discovery</u>." ECF No. 45 at 2 (emphasis added). That ship has clearly sailed and is foundering on the shoals of <u>unlimited discovery</u>.

      Importantly, it is not clear to the court that Oakwood continues to have a ground on which to plant the flag with these requests. SWK responded from the outset that the information Oakwood was seeking about its customers was not relevant to the SCUTPA claim. <u>See</u> ECF No. 77-1 at 5 (noting that unique challenges and difficulties are to be expected from SWK's wide array of customers). Even now, SWK continues to note that the so-called "CODE RED" on the QBR spreadsheet that Oakwood used to identify potential customers is misleading. According to SWK's chief operating officer, Diana Keyser ("Keyser"), the company assigns a color classification for each customer to describe the status of the project at a particular point in time. ECF No. 104-1, Kyser Decl. ¶¶ 5–7. A "red" classification simply means the customer "is in the middle of challenges," including those related to the customer's own business or challenges with other vendors. <u>Id.</u> ¶ 10. Indeed, projects often "fluctuate either direction numerous times

over the course of a project," and it is normal for every project to be classified as red at some point during its lifespan. Id. ¶¶ 12–13.

SWK's arguments were well-taken, even when initially raised. See ECF No. 86 at 15 ("As the court explained at the hearing, providing poor services is not enough . . . . to raise a valid SCUTPA claim."). But the court permitted the discovery based on Rule 26's relatively low threshold. Now, four discovery requests and at least ten customers later, SWK's concerns seem more salient. SCUTPA "declares unfair or deceptive acts or practices in trade or commerce unlawful." Singleton v. Stokes Motors, Inc., 595 S.E.2d 461, 466 (S.C. 2004) (citing S.C. Code Ann. § 39-5-20(a)). "A deceptive practice is one which has a tendency to deceive." deBondt v. Carlton Motorcars, Inc., 536 S.E.2d 399, 407 (S.C. Ct. App. 2000). It is unclear why code-red classifications necessarily imply deception, but the court was previously willing to grant Oakwood's request to see if the information could lead to other matters that bear on this litigation. At this point though, Oakwood appears to be singularly interested in hunting down suggestions of customer struggles, either as indicated by the QBR spreadsheets or from emails. SWK has more than rebutted the good cause showing as to the spreadsheet by explaining that "[a] classification of red does not mean there has been any claim of wrongdoing." Kyser Decl. ¶ 14; see also id. ¶ 10 ("Any issue that affects the implementation can classify the project as red."). At this point, the "code reds" highlighted by Oakwood merely evince some customer difficulties, and such evidence does not violate SCUTPA. See Culler v. S.C. Elec. & Gas Co., 2004 WL 7332849, at *4 (D.S.C. Apr. 27, 2004) ("SCUTPA was not intended to make those that inadequately perform a service liable.").

This is not to say that Oakwood has been silent on the issue. Oakwood attaches several emails identified from discovery up to this point and claims that the emails reveal a lack of accountability and a "blame-the-customer" attitude that was "adopted top-down in the company." ECF No. 105 at 3. For example, one internal email references SWK's supposed struggles with CCS and Transtate/Avante. Id. at 4. But SWK's argument about the email encounters the same problem as its arguments about the QBR spreadsheet. The email reflects that SWK failed to act "in a timely man[ner]" and to "[c]ommunicate thoroughly." Id. At most, this is evidence of poor customer service, but it does not rise to the level of fraud or deception.

Oakwood's other exhibits do no better. Oakwood attempts to frame an email sent by Keyser to two other SWK executives as an email in which Keyser rues mistakes made in projects with Pine View and Tom Fouts. Id. at 6 (citing ECF No. 105-1). The email appears to provide the genesis of a color-coding scheme for SWK's sales campaigns—a cousin, seemingly, of SWK's implementation color-coding scheme. Oakwood claims the scheme was a "corrective policy," id., but the email does not reflect what went wrong with the Pine View and Tom Fouts sales. If anything, the email shows that SWK sought to improve and meet several benchmarks in its performance, including "experience with ERP implementation," reasonable budgets, and "experience/success in th[e] industry." ECF No. 105-1 at 3.

Oakwood cites two final exhibits for the proposition that SWK intentionally sold Acumatica to customers for whom the product and implementation were not feasible. ECF No. 105 at 6 (citing ECF Nos. 105-2 and 105-3). In the first of the two emails, an SWK employee wrote to another employee, "I see dark clouds from the perspective that

[the customer] should have never been sold Acumatica, it needs big customizations to work for them." ECF No. 105-2. As SWK explained at the hearing though, SWK's business always revolves around customized software systems, and it is natural for the company to prefer minimal customizations where possible. At the hearing, Oakwood focused primarily on its final exhibit, and that final email similarly drew the court's attention upon review. SWK's practice manager, Jed Buddecke ("Buddecke") wrote in the email: "<u>There are times when we sell clients a solution that doesn't work.</u> This isn't one of those times." ECF No. 105-3 (emphasis added). Buddecke then went on to list and explain the benign reasons why (in his view) the customer at issue, Eagle Carports, had switched resellers.

      The court certainly recognizes Oakwood's concern with SWK's outward admission that it sells/sold unworkable solutions to customers. But the attached email is about Eagle Carports; it does not describe those other occurrences and does not explain whether the purported sales were done intentionally or not. Certainly, the court could view the email as providing information that "reasonably could lead to other matters that could bear on . . . any issue that is or may be in the case." <u>Tarashuk v. Orangeburg Cnty.</u>, 2022 WL 473231, at *2 (D.S.C. Feb. 15, 2022) (quoting <u>Amick v. Ohio Power Co.</u>, 2014 WL 468891, at *1 (S.D. W. Va. Feb. 5, 2014)) (cleaned up). But this is the game that Oakwood has already been playing. The court previously permitted discovery based on information extracted from the QBR spreadsheet, and it intended for such discovery to be a gateway to more direct and substantial evidence. Oakwood can plausibly claim to still be in the evidence-gathering stage. But at this point, after 125,000 produced documents, one would expect more evidence of repetitive, deceptive practices if Oakwood is to

credibly present a SCUTPA claim at trial.  The court would be more convinced that the costs justify discovery if, for example, Oakwood discovered evidence of the sale of "solution[s] that do[n't] work" referenced in the Eagle Carports email, instead of mere allusions to the practice.

The Federal Rules provides that "the court <u>must</u> limit the frequency or extent of discovery" if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."  Fed. R. Civ. P. 26(b)(2)(C)(ii) (emphasis added).  To that end, the court holds Oakwood's requests in abeyance as to Requests for Production Nos. 8, 9, 10, 11, 12, 13, and 14.  The court will provide Oakwood with three weeks to provide a supplemental brief to the court explaining what bases from existing files Oakwood has for showing that these discovery requests are reasonably connected to its SCUTPA claim.  If the discovery to date from the ten companies (and more, if including Arch-I-Tech and Tom Fouts) does not support the elements of the claim, the court will deny the remaining requests and bar future requests about customers on the grounds that they are not reasonably calculated to lead to the discovery of relevant information.[3]

## IV.  CONCLUSION

For the reasons set forth above, the court partially **DENIES** and partially **HOLDS IN ABEYANCE** the motion to compel in accordance with this order.

---

[3] Both sides request sanctions against the other for the costs and expenses incurred in seeking their desired relief.  ECF No. 99 at 4; ECF No. 104 at 15.  The court declines to award either side fees at this time but notes the possibility of sanctions in the future.

    **AND IT IS SO ORDERED.**

                                              **DAVID C. NORTON**
                                              **UNITED STATES DISTRICT JUDGE**

**April 26, 2023**
**Charleston, South Carolina**

14